## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PRECISION TACTICAL        ) Case No.: 3:23-CV-07752
ARMS COMPANY, LLC,        )
       )
    Petitioner,        )
       )
  v.        )
       )
AARON GERBER,        )
In his Official Capacity as Director of        )
Industry Operations for the Tampa Field     )    **PETITION FOR**
Division of the Bureau of Alcohol, Tobacco, )    **JUDICIAL REVIEW**
Firearms & Explosives        )
       )
    Respondent.        )

_____

Petitioner, Precision Tactical Arms Company files its *Petition for Judicial Review* of Respondent's March 7, 2023 Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License, and sets forth as follows:

## INTRODUCTION

1.    This is a petition for *de novo* judicial review of the revocation of a federal firearms license ("FFL"). This action is being timely brought pursuant to 18 U.S.C. § 923(f)(3) and its related regulations.

## PARTIES

2.    Plaintiff, Precision Tactical Arms Company, LLC ("PTAC") is a Florida limited liability company, active and in good standing, with its principal

place of business located at 5155 South Ferdon Blvd., Unit A, Crestview, Florida 32539.  PTAC maintains a Type 7 FFL number 1-59-091-07-5E-26145 which allows it to act as a manufacturer and dealer of firearms.

3.      Respondent, Aaron R. Gerber ("DIO Gerber") is the Director of Industry Operations for the Tampa Field Division of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), which is the ATF Field Division that regulates the Petitioner's business premises and is sued in his official capacity as Director of Industry Operations for the Tampa Field Division of the ATF.  DIO Gerber is presently enforcing the laws, customs, practices, and polices that form the basis of this action and issued the revocation of PTAC's FFL, which is at issue in this case.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 18 U.S.C. § 923(f)(3).

5.      Venue for this action is properly in this District pursuant to 18 U.S.C. § 923(f)(3), as PTAC's principal place of business is located in Crestview, Florida.

## REGULATORY BACKGROUND FACTS

6.      Pursuant to 18 U.S.C. § 923(a), an FFL is required for any person who wishes to engage in the business of dealing firearms.

7.      To receive an FFL, a person must submit an Application for a Federal

Firearms License (ATF Form 7) to the ATF.  27 CFR §§ 478.41; 478.44.

8.    ATF will issue an FFL if all licensing requirements are met. 27 CFR § 478.47.

9.    As a requirement of maintaining an FFL, licensees are required to follow numerous laws and regulations including, but not limited to, the Gun Control Act ("GCA"), its implementing regulations 27 CFR § 478 *et seq.,* and the National Firearms Act ("NFA").

10.    Key regulatory requirements are that licensees must maintain a record of acquisitions and dispositions of firearms in a required format called an Acquisition and Disposition Record ("A&D Record") (27 CFR § 478.125) and must complete ATF Forms 4473 when transferring firearm(s) to a non-licensee (27 CFR § 478.124).

11.    ATF conducts regular compliance inspections of licensees to evaluate compliance with the GCA and NFA and their related regulations.  27 CFR § 478.23(b)(2).

12.    On June 23, 2021, the Biden-Harris Administration announced a "Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety." A copy is attached hereto as Exhibit A.

13.    As part of the new Policy, there was to be "zero tolerance for rogue gun dealers that willfully violate the law" ("Zero Tolerance Policy").  Ex. A.

14.    On January 28, 2022, in response to the Zero Tolerance Policy, the United States Department of Justice, through the Bureau of Alcohol, Tobacco, Firearms and Explosives issued Order ATF O 5370.1E (the "Order")[1].  A copy is attached hereto as Exhibit B.

15.    Pursuant to the Order, "revocation is the assumed action, unless extraordinary circumstances exist" when a licensee fails to contact the National Instant Criminal Background Check System ("NICS") for a background check prior to transferring a firearm to a non-licensee." Ex. B.

16.    The Order unlawfully presumes revocation based solely on whether a violation occurred and completely and improperly ignores whether the violation was, in fact, willful.  Essentially, ATF has shifted the burden of proof from itself (*i.e.,* to show "willfulness") to licensees (*i.e.,* to show "non-willfulness").

17.    Under the Zero Tolerance Policy, FFL revocations have increased dramatically despite no changes to the GCA, NFA or their implementing regulations.

18.    Against this regulatory background, the ATF has proceeded to revoke PTAC's FFL.

---

[1] Keene, H. (2022) *Internal ATF docs show 'zero tolerance' guidelines for shutting down gun stores*, *FoxNews*. Available at: https://www.foxnews.com/politics/internal-atf-docs-show-zero-tolerance-guidelines-shutting-down-gun-stores (Accessed: April 5, 2023).

## CASE SPECIFIC FACTS

19.     PTAC was formed in 2013 and is owned 50% by Ward Lewis and 50% by Jay Carter.

20.     PTAC obtained an FFL in 2013 and sells firearms and firearm related accessories.

21.     PTAC currently maintains Type 7 FFL number 1-59-091-07-5E-26145, which allows it to operate as a manufacturer and dealer of firearms.

22.     PTAC is also a Special Occupational Taxpayer ("SOT"), which authorizes it to sell firearms regulated by the NFA (*i.e.,* silencers, short-barreled rifles, machine guns, etc.).

23.     PTAC has five full-time employees and three part-time employees who rely on the income from the business to support their families.

24.     PTAC was first audited in 2018, and ATF issued a Report of Violations documenting 17 categories of violations and over 4000 total instances of violations.

25.     ATF conducted a warning conference as a result of the audit.

26.     Following the 2018 audit, at the recommendation of ATF, PTAC implemented compliance software to improve its compliance.

27.     PTAC also forced its store manager to resign and focused its efforts on improved compliance.

28.     PTAC was audited again in 2019, and ATF issued a Report of

Violations documenting 13 categories of violations and 327 instances of violations, a dramatic improvement from the 2018 audit.

29.    ATF conducted another warning conference as a result of the audit.

30.    ATF began a third audit of PTAC on September 14, 2021.

31.    Industry Operation Investigator Thomas McCarthy led the audit for ATF.

32.    On November 3, 2021, ATF issued a Report of Violations based on the findings of the audit. A copy is attached as Exhibit C.

33.    Even though PTAC's sales volume had nearly quadrupled from the 2018 audit, the instances of violations from the 2018 audit to the 2021 dropped over 92%.

34.    This improvement was no accident, as PTAC invested a great deal of time, energy, and capital into improving compliance.

35.    On or about September 1, 2021, PTAC promoted a new store manager.

36.    In November 2021, PTAC hired a compliance manager whose sole focus is ATF compliance.

37.    In January 2021, PTAC hired an inventory manager to manage the firearm inventory and conduct audits to identify errors.

38.    After the 2019 audit, PTAC implemented a standard operating procedure to implement regular audits and inventories of its firearms and ATF

required records.

39.     Soon after the 2021 audit, this standard operating procedure was further revised and updated to address issues identified during the 2021 audit.

40.     Soon after the 2021 audit, PTAC implemented formal training policies to improve compliance

41.     Despite all of PTAC's compliance focused efforts, all of which show that the licensee is willing to do what is necessary to comply with applicable law and regulations, on August 4, 2022, DIO Gerber issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine ("Notice") notifying the Licensee of ATF's intent to revoke its FFL based on the results of the 2021 audit.

42.     The Notice was based on five categories of violations detailed in five numbered paragraphs of the Notice.

43.     PTAC requested a hearing to review the Notice pursuant to 27 CFR § 478.74.

44.     DIO Gerber held a hearing on the Notice on January 26, 2023.

45.     At the hearing, the ATF 'dropped' the allegations contained in the second paragraph of the Notice.

46.     Mr. Ward Lewis, owner and Responsible Person on the FFL, testified that all of the violations were the result of accidental and inadvertent human mistakes rather than willful violations of the law.

47.     DIO Gerber issued a Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License ("Final Notice") which revoked PTAC's FFL in just 15 days from receipt based on paragraphs 1, 3, 4, and 5 of the Notice.

48.     At the time the Final Notice was received, PTAC had nearly 1000 firearms in inventory and approximately 371 NFA firearms in inventory.

49.     15 days was insufficient to permit PTAC to prepare an appeal or liquidate its inventory, including NFA firearms, which require the submission of forms that ATF must approve, often taking more than nine months.

50.     On March 15, 2023, PTAC through counsel, asked DIO Gerber to stay the revocation until May 9, 2023 (the same day the 60-day appeal window expired), giving PTAC an opportunity to request an unconditional stay pending the outcome of this Petition. A copy of the email is attached as Exhibit D.

51.     On March 20, 2023, DIO Gerber granted, via email, a 60-day stay upon the condition that PTAC not acquire any additional firearms unless "ordered prior to the issuance of the Final Notice". A copy of the email is attached as Exhibit E.

52.     However, the Final Notice was issued on March 7, 2023, which was three days before PTAC even received the Final Notice as Exhibit F.

53.     Prior to receiving the Final Notice and while operating under the 15-day period before the revocation was effective, PTAC continued to operate which

included acquiring and ordering firearms (all of which it was authorized to do so long as it held its FFL).

54.     PTAC informed the ATF that it would comply with the conditions of the limited 60-day stay and cease acquiring new firearms not ordered prior to the granting of the 60-day stay, explaining that it had ordered and acquired after March 7, 2023 as it was fully authorized to do under applicable law and regulations.  A copy of the email is attached as Exhibit G.

55.     ATF Division Counsel Amy Freyermuth requested additional information regarding the number of firearms the licensee acquired and ordered after May 10th, and PTAC informed her that it had acquired eleven total firearms and two additional were ordered at the request of customers but not yet received. A copy of these communications are attached as Exhibit H.

56.     However, on March 21, 2023, without cause and without specifying a reason, DIO Gerber arbitrarily retracted the 60-day stay and issued a 30-day stay (via email), which was prejudicial to PTAC's ability to consider its options and to prepare an appeal to this Court within its 60-day statutory deadline, as well as causing irreparable harm to its ability to operate without disruption while exercising its legal right to seek judicial review.  A copy of DIO Gerber's email is attached as Exhibit I.

## COUNT 1: 27 CFR 478.102(c)

57.     Paragraphs 1-56 are incorporated as if restated in full herein.

58.     The first numbered paragraph of the Notice, which corresponds to violation category 12 from the 2021 ROV, provides that PTAC violated 27 CFR § 478.102(c) by transferring a firearm after the NICS background check expired.

59.      27 CFR § 478.102(c) sets forth that a NICS background check is only valid for thirty (30) days, and that in the event more than thirty (30) days have passed, a licensee must initiate a new NICS check.

60.     In one instance, PTAC transferred a firearm after the NICS background check approval expired.

61.     Specifically, PTAC ran a NICS background check on a customer on January 23, 2021, and it was approved on the same day.

62.     The customer came to the store to pick up the firearm within thirty (30) days, but at the last minute he decided to have PTAC add a custom optic to the firearm.

63.     The customer then came to the store on March 15, 2023 to pick up the firearm and PTAC transferred the firearm without conducting a new NICS check.

64.     PTAC did not commit this violation willfully.

65.     This violation occurred when despite training and safeguards, an employee mistakenly transferred a firearm and did not catch that the NICS approval

was expired.

66.     PTAC had compliance software, which should not have allowed a transfer if a NICS background check approval was expired.

67.     Upon discovering the violation, PTAC contacted Luke Coldiron, the developer of the software, who confirmed that the software should have prevented he transfer.  However, Mr. Coldiron determined there was a glitch in the software's code that stopped the software from working as intended.

68.     Mr. Coldiron subsequently issued a patch to fix the issue.  PTAC presented an affidavit detailing Mr. Coldiron's version of events at the revocation hearing. A copy is attached as Exhibit J.

69.     Director Gerber wrongfully found that this violation showed "disregard of or plain indifference to the GCA" sufficient to constitute willfulness.

70.     However, PTAC had software, training, and procedures in place all designed to prevent the error.  Thus, PTAC was not showing disregard of or plain indifference to the law, but rather the opposite.

71.     Additionally, this error occurred one time over the audit period, which included the transfer of over 2000 firearms (an error rate of less than .05%).  This is further evidence that the license was not showing disregard or plain indifference to the law.

72.     Therefore, this violation was not willful.

## COUNT 2: 27 CFR §§ 478.121(c), 478.123, 478.128(c)

73.    Paragraphs 1-56 are incorporated as if restated in full herein.

74.    The third and fourth numbered paragraphs of the Notice, which partially correspond to violation categories 5 and 6 from the 2021 ROV, state that PTAC violated 27 CFR §§ 478.121(c), 478.123, 478.128(c) by entering an incorrect address for the transferee in its A&D Record in 21 instances.

75.    When transferring a firearm to a non-licensee, a licensee is required to enter the address of the transferee in its A&D Record (27 CFR § 478.123), and a licensee cannot enter false information in its A&D Record (27 CFR §§ 478.121(c), 478.128(c)).

76.    In 21 instances PTAC entered its own address for the address of the transferee.

77.    When a licensee accepts a firearm for gunsmithing work such repair, the licensee is not required to enter the firearm in its A&D Record if it will be returned to the person from whom it was received on the same day.  27 CFR §§ 478.123(a) 478.125(e).

78.    However, if the firearm is not returned to the person from whom it was received on the same day that the licensee took possession of the firearm, then the licensee must enter the firearm as an acquisition in its A&D Record. 27 CFR §§ 478.123(a) 478.125(e).

79.     In 21 instances, customers that were meant to have their firearms returned the same day did not pick up their firearms before the close of business. Thus, PTAC was required to enter the firearms as acquisitions in its A&D Record.

80.     Unfortunately, PTAC did not have the owner's addresses because they did not anticipate being required to make an entry in the A&D Record.

81.     PTAC was forced to enter its own address into the A&D Record as its electronic compliance software would not allow the transaction to save with missing information.

82.     PTAC was faced with the choice of either not recording an acquisition in its A&D Record as required by law or to enter the incorrect address information in its A&D Record for correction at a later date.

83.     PTAC believed that making the A&D entry with incorrect address information was preferable to not making the entry at all.

84.     The information was carried over when the firearms were disposed back to the owners.

85.     Prior to the audit, PTAC obtained all 21 customers addresses and corrected the A&D Record.

86.     However, during the audit PTAC mistakenly provided IOI McCarthy with the uncorrected version of the A&D Record.

87.     IOI McCarthy proceeded to audit the uncorrected version of the A&D

Record.

88.     Other than prior A&D Record violations in different circumstances, DIO Gerber cited no evidence to show these violations were willful.

89.     The violations were the result of inadvertent and unforeseen circumstances which have now been corrected.

90.     PTAC has implemented a policy to always collect all information needed to make an entry in the A&D Record before taking possession of a firearm, even if the firearm is meant to be returned to the owner on the same day.

91.     Therefore, these violations were not willful.

## COUNT 3: 27 CFR § 478.124(c)(4)

92.     Paragraphs 1-56 are incorporated as if restated in full herein.

93.     The fifth numbered paragraph of the Notice, which partially corresponds to violation category 7 from the 2021 ROV, states that PTAC violated 27 CFR § 478.124(c)(4) by failing to properly identify firearms being transferred on ATF Form 4473s.

94.     27 CFR § 478.124(c)(4), requires a licensee to properly identify the firearm being transferred on ATF Form 4473 by including the including model name, manufacturer, importer (if any), type, and serial number.

95.     In 66 instances PTAC recorded an incorrect manufacturer, importer, model, or type of firearm.

96.     Importantly, PTAC correctly recorded all serial numbers.

97.     IOI McCarthy testified that even with the mistakes, all firearms would still be traceable.

98.     PTAC does not contest that these violations occurred, but they were will not willful.

99.     When an FFL takes a completed firearm and manufactures it into another type of firearm, for example from a receiver into a rifle, the FFL must ensure the firearm type is properly reflected on ATF 4473 when it is transferred.

100.    Many of the violations occurred when PTAC manufactured firearms by converting them from one type to another and failed to properly update the new firearm information.

101.    The Final Notice provided no evidence to justify its finding of willfulness except that these were repeat violations.

102.    The mere fact that violations were repeated is not sufficient to demonstrate willfulness. *Jim's Pawn Shop, Inc. v. Bowers*, 2008 U.S. Dist. LEXIS 97199, ¶24.

103.    Prior to the 2021 audit, PTAC implemented many changes in an effort to comply with all ATF laws and regulations.

104.    PTAC employees made inadvertent human errors which have been corrected and new policies and employees are now in place to prevent such

violations in the future.

105. Therefore, the violations were not willful.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue an immediate temporary restraining order and injunction staying the Final Notice until this case is concluded;

2. Accept and review the complete record of proceedings related to the revocation of PTAC's FFL;

3. Allow discovery and supplementing of the factual record and legal arguments by Petitioner prior to conducting *de novo* review;

4. Conduct a *de novo* review and hearing on the underlying facts and DIO Gerber's decision to revoke PTAC's FFL;

5. Conclude DIO Gerber erred, did not have adequate grounds, and, thus, was unauthorized to revoke PTAC's FFL;

6. Order the DIO to withdraw the Final Notice; and

7. Award such other relief, including costs and attorneys' fees, as this Court deems appropriate.

Respectfully Submitted by:


s/ *Todd M. Ladouceur*
TODD M. LADOUCEUR, Florida Bar No.: 064051
GALLOWAY, JOHNSON, TOMPKINS, BURR AND
SMITH, PLC
118 E. Garden Street,  Pensacola, FL 32502
Phone: 850-436-7000 | Fax: 850-436-7099
tmlservice@gallowaylawfirm.com

/s/ Derek A. DeBrosse
/s/ Derek A. DeBrosse-Ohio BAR 0084183
(*pro hac vice to be submitted*)
/s/ Michael A. Truman Ohio BAR 0092506
 (*pro hac vice to be submitted*)
CHESHIRE DEBROSSE, P.C.
7240 Muirfield Dr., Suite 160
Dublin, OH 43017
Telephone: 888.399.7863
Fax: 888.271.6215
derek@munitionsgroup.com
michael@munitionsgroup.com
*Attorneys for Petitioner*

# EXHIBIT A

JUNE 23, 2021

# Fact Sheet: Biden-Harris Administration Announces Comprehensive Strategy to Prevent and Respond to Gun Crime and Ensure Public Safety

President Biden believes that the surge in gun violence that has affected communities across the country over the last year and a half is unacceptable, and his Administration is moving

decisively to act with a whole-of-government approach as we enter the summer months when cities typically experience a spike in violence.

Today, the Biden-Harris Administration is announcing a comprehensive strategy to combat gun violence and other violent crime. This strategy implements preventative measures that are proven to reduce violent crime, and attacks the root causes – including by addressing the flow of firearms used to commit crimes.

This strategy will use the Rescue Plan's historic funding levels and clear guidance to help state, local, territorial, and tribal governments get the money they need to put more police officers on the beat – with the resources, training, and accountability they need to engage in effective community policing – in addition to supporting proven Community Violence Intervention programs, summer employment opportunities, and other investments that we know will reduce crime and make our neighborhoods safer.

The strategy will also address the direct link between gun violence and the rise in violent crime by taking immediate steps to keep guns out of the wrong hands, including by strengthening ATF's efforts to stem the flow of firearms used in crimes, and by launching multijurisdictional firearms trafficking strike forces to stop illegal gun trafficking across state lines.

Combined, the Administration's comprehensive strategy will:

- **Stem the flow of firearms used to commit violence, including by holding rogue firearms dealers accountable for violating federal laws;**

- **Support local law enforcement with federal tools and resources to help address summer violent crime;**

- **Invest in evidence-based community violence interventions;**

- **Expanding summer programming, employment opportunities, and other services and supports for teenagers and young adults; and**

- **Help formerly incarcerated individuals successfully reenter their communities.**

Now is the time to act. With the secondary consequences of the pandemic and the proliferation of illegal guns over the same period, we have seen increased violence over the past year and a half. Homicides rose 30%, and gun assaults rose 8% in large cities in 2020. The number of homicides in the first quarter of 2021 was 24% higher than the number of homicides in the first quarter of 2020, and 49% higher than in the first quarter of 2019. Black and brown Americans are disproportionately harmed by the direct and indirect consequences of gun violence.

As the President has repeatedly said, we are experiencing an epidemic of gun violence in this country. This violence robs us of loved ones and causes life-altering physical injuries. It causes lasting trauma, with cascading consequences for children, families, and communities. It steals our freedom, our sense of belonging and security, and

has ripple effects for our economy.

The President continues to call on Congress to take action to end this gun violence epidemic. But he knows we cannot afford to wait a single day while lives are being taken, which is why he has already announced a set of initial actions to prevent gun violence – including toughening regulations on ghost guns and moving historically quickly to nominate a permanent ATF Director – in addition to the steps announced today as part of this strategy.

**Stem the Flow of Firearms Used to Commit Violence**

The Biden Administration is taking action to help stem the flow of guns into the hands of those responsible for violence by:

**Establishing zero tolerance for rogue gun dealers that willfully violate the law.** Gun dealers across the country are regulated by federal law that is enforced by the Bureau of Alcohol, Tobacco, Firearms and Explosives

(ATF). Dealers that fail to comply with their obligations under the law create risks for all of us. Today, the Justice Department is announcing a new policy to underscore zero tolerance for willful violations of the law by federally licensed firearms dealers that put public safety at risk. Absent extraordinary circumstances that would need to be justified to the Director, ATF will seek to revoke the licenses of dealers the first time that they violate federal law by willfully 1) transferring a firearm to a prohibited person, 2) failing to run a required background check, 3) falsifying records, such as a firearms transaction form, 4) failing to respond to an ATF tracing request, or 5) refusing to permit ATF to conduct an inspection in violation of the law.

In addition, ATF will notify every firearms dealer whose license is revoked about how to lawfully transfer any remaining inventory, as well as the potential criminal consequences of continuing to engage in the business of buying and selling guns without a license. The prior Administration

stopped this important notification
practice that helps deter future
unlawful activity.

**Maximizing the efficacy of ATF
resources to crack down on rogue gun
dealers violating our laws.** The
Administration continues to call on
Congress to increase funding for ATF to
hire additional personnel necessary to
increase the number of inspections and
enforcement actions taken against
dealers in violation of federal law. The
President's FY 22 budget request would
allow ATF to add inspectors in every
field division around the country. In the
meantime, ATF is announcing the
following actions to increase the
efficacy of its existing, limited
resources:

- **Better coordination with state and
  local officials with on-the-ground
  knowledge of which dealers are
  supplying firearms that show up at
  crime scenes.** ATF has designated a
  specific point of contact in every field
  division for mayors, police chiefs, or
  other local leaders to report
  concerns about particular dealers'

compliance with the law. This information may provide valuable leads for ATF investigations and serve as a source of information that helps focus inspection resources on the places that need them most.

- **Formalizing the use of data-driven prioritization of inspection resources.** Starting today, ATF will make clear to investigators in every field division—through trainings and guidance—that when identifying inspection priorities they must consider a number of factors related to public safety, including the extent to which firearms sold by the dealer are later used in criminal activity; the time between the sale of a firearm and its use in a crime; the number of recoveries associated with shootings, domestic violence, and other violent offenses; and additional information developed by local law enforcement partners. This data-driven prioritization will allow ATF to target its limited inspection resources to ensure compliance with federal law.

- **Equipping states that have their own gun dealer licensing systems with data from ATF inspections.** Sixteen states license or regulate firearms dealers themselves, and their inspection systems can be force multipliers in protecting public safety. Starting next month, ATF will begin sharing inspection data with these states so that officials there can determine whether to take their own steps to shut down dealers that fail to live up to their obligations under state law.

**Launching multijurisdictional firearms trafficking strike forces.** The Biden-Harris Administration recognizes that the federal government has a critical role to play in coordinating multijurisdictional enforcement efforts to stop the illegal flow of firearms across state lines. Yesterday, the Justice Department announced that it is launching five new law enforcement strike forces focused on addressing significant firearms trafficking corridors that have diverted guns to New York, Chicago, Los Angeles, the Bay Area, and Washington,

D.C. These strike forces, which will launch within the next 30 days, will be led by designated United States Attorneys who will coordinate not only with ATF but also with state and local law enforcement partners in places where firearms originate and where they are used to commit crimes. The strike forces will share information and otherwise coordinate their efforts across districts where firearms trafficking schemes cross state or jurisdictional boundaries. As part of this effort, ATF is issuing a best practices guide for law enforcement agencies that will include specific questions that officers should ask unlawful firearm possessors to help identify sources of trafficked crime guns.

**Providing the public with additional data to promote transparency and accountability in enforcement of federally licensed firearms dealer policies.** ATF will publicly post more detailed information about inspection findings and enforcement actions. For the first time, this publicly posted data will be disaggregated to show the

number of inspections conducted in each field division, the number of inspections that identified violations, and actions taken by ATF to implement the willful-violation policy discussed above (including any application of the extraordinary circumstances exception). This data will promote transparency and accountability for the enforcement of our existing gun laws.

**Stemming the proliferation of "ghost guns" and modified firearms.** During the April address in the Rose Garden by the President and Attorney General, the Justice Department announced that it was beginning the rulemaking process to help stop the proliferation of dangerous firearms that are currently circumventing our gun laws. The Justice Department has since issued two proposed rules to follow through on this commitment. First, the Justice Department issued a proposed rule to help address the proliferation of "ghost guns," which are homemade firearms that are increasingly ending up at crime scenes and often cannot be traced by law enforcement due to the lack of a serial number. Second, the Justice Department issued a proposed rule to

make clear when a device marketed as a stabilizing brace effectively turns a pistol into a short-barreled rifle subject to the requirements of the National Firearms Act. Modifying a pistol with an arm brace can make a firearm more stable and accurate while still being concealable.

**Convening state legislators and Attorneys General regarding policy strategies to hold gun dealers and manufacturers accountable for their contributions to the flow of crime guns.** The President continues to call on Congress to repeal the Protection of Lawful Commerce in Arms Act (PLCAA), which gives gun dealers and manufacturers special immunity from certain liability for their products. In the meantime, the White House will convene state legislators and Attorneys General to discuss strategies for enacting and employing state liability laws that can be used to hold dealers and manufacturers accountable for improper conduct not covered by PLCAA.

These actions are part of the Biden-

Harris Administration's comprehensive strategy to reduce gun violence through executive action and legislation. For example, earlier this month the Justice Department issued model state "red flag," or "extreme risk protection order," legislation. Extreme risk protection order laws allow family members or law enforcement to petition for a court order temporarily barring people in crisis from accessing firearms if they present a danger to themselves or others. The President urges Congress to pass an appropriate national "red flag" law, as well as legislation incentivizing states to pass their own versions of these laws.

The President again strongly urges the Senate to ban assault weapons and high-capacity magazines, and pass the three House-passed, bipartisan pieces of legislation which would strengthen our gun background check system.

**Provide law enforcement the tools and resources needed to tackle gun violence**

As part of the Justice

Department's **Comprehensive Strategy for Reducing Violent Crime**, the Justice Department is committed to supporting law enforcement in local communities in addressing gun violence. In preparation for a possible increase in violence typically seen over the summer months, where needed and appropriate, the Justice Department is providing the following law enforcement support:

- The FBI is making available cutting-edge analytical resources to support state and local law enforcement efforts to identify the most violent offenders and most dangerous criminal organizations in communities. The FBI is also deploying agents to assist with enforcement operations targeting these entities.

- Where feasible, the ATF is embedding with local homicide units and expanding the availability of its National Integrated Ballistic Information Network (NIBIN) Correlation Center, which matches ballistics from crime scenes to other

ballistic evidence nationwide.

- The DEA is focusing its efforts, in coordination with state, local and Tribal law enforcement, to disrupt the activities of the most violent drug trafficking gangs and egregious drug-trafficking organizations operating in the highest-crime areas.

- The United States Marshals Service, in coordination with state and local authorities, is conducting fugitive sweeps throughout the country focused on individuals subject to state or local warrants for homicide, aggravated assault with a firearm, aggravated robbery, robbery with a firearm, rape or aggravated sexual assault.

**Guidance on Using ARP Funds to Reduce Violence.** Today, the Treasury Department is highlighting that communities experiencing a surge in gun violence as a result of the pandemic may use the American Rescue Plan's $350 billion in state and local funding for purposes such as:

- Hiring law enforcement officials – even above pre-pandemic levels – or paying overtime where the funds are directly focused on advancing community policing strategies in those communities experiencing an increase in gun violence associated with the pandemic.

- Additional enforcement efforts to reduce gun violence exacerbated by the pandemic, including prosecuting gun traffickers, rogue dealers, and other parties contributing to the supply of crime guns, as well as collaborative federal/state/local efforts to identify and address gun trafficking channels.

- Investing in technology and equipment to allow law enforcement to more efficiently and effectively respond to the rise in gun violence resulting from the pandemic.

In addition, the Treasury Department is clarifying that any community may use ARP state and local aid for the above strategies and any other public safety programs, up to the level of revenue loss the jurisdiction experienced during

Fact Sheet: Biden-Harris Administration Announces Comprehensive St...nd Respond to Gun Crime and Ensure Public Safety | The White House       4/5/23, 3:15 PM

the pandemic. And any community may use ARP funds to rehire police officers and other public servants to restore law enforcement and courts to their pre-pandemic levels.

**Byrne JAG Funds.** Applications for the Justice Department's FY21 $276 million Byrne Justice Assistance Grant program are open now. Byrne JAG provides critical support to State and territory, local, and Tribal governments across a range of program areas, including crime prevention and education, law enforcement, prosecution, indigent defense, courts, corrections and community corrections, drug treatment and enforcement, technology improvement, crime victim and witness initiatives, and planning and evaluation. Community violence intervention programs are eligible uses of the funding.

In soliciting grant applications for this program, the Department has emphasized the importance of addressing the backlog of cases created when courts at every level were forced to cancel or scale back proceedings due

to COVID-19. It has made clear that funds could be used, for example, to purchase technology that would facilitate virtual outreach and appearances, to enhance case management systems, to build tools to support diversion and alternatives to incarceration as part of the review of backlogged cases, or to retrofit courthouses to mitigate risks to staff.

The President is also seeking a $300 million increase for the Community Oriented Policing Services (COPS) Hiring program in his recent budget request. These funds will advance community policing and give police the resources they need to keep their communities safe.

**Invest in evidence-based community violence interventions**

Community violence intervention (CVI) programs have been shown to reduce violence by as much as 60%. These programs are effective because they leverage trusted messengers who work directly with individuals most likely to commit gun violence,

intervene in conflicts, and connect people to social, health and wellness, and economic services to reduce the likelihood of violence as an answer to conflict.

Last month, the Treasury Department announced that the American Rescue Plan's $350 billion in state and local funding can be used to invest in evidence-based community violence interventions. The Department of Education also released guidance clarifying that ARP's $122 billion in K-12 funds can be used for CVI strategies. To date, the Administration has transferred more than $190 billion of state and local recovery funds and $81 billion in education funds, and additional support is on the way.

Top

Today, the President is announcing that the Administration will convene and support a CVI Collaborative of 15 jurisdictions that are committing to use a portion of their ARP funding or other public funding to increase investment in their CVI infrastructure, including to anticipate and respond to the potential rise in violence this summer. These

jurisdictions include:

- Atlanta, GA

- Austin, TX

- Baltimore, MD

- Baton Rouge, LA

- Chicago, IL

- Detroit, MI

- King County, WA

- Los Angeles, CA

- Memphis, TN

- Minneapolis & St. Paul, MN

- Newark, NJ

- Philadelphia, PA

- Rapid City, SD

- St. Louis, MO

- Washington, DC

Over the next 18 months, the
Administration will convene meetings
with officials from these communities,
facilitate peer-to-peer learning, and
provide technical assistance. This effort

will support both proven and new strategies that reduce gun violence and strengthen community-based infrastructure to enhance public safety for children, families, and communities and to advance equity. A group of philanthropies that have been leaders on this issue will support this collaborative learning network by deploying CVI experts to provide training and technical assistance, identify best practices, integrate proven and innovative public-health approaches, and help local community-based organizations scale CVI efforts this summer and beyond. This group includes:

- Arnold Ventures

- The California Endowment

- Annie E. Casey Foundation

- Emerson Collective

- Ford Foundation

- Heising-Simons Foundation

- Joyce Foundation

- W.K. Kellogg Foundation

- Kresge Foundation

- The John D. and Catherine T. MacArthur Foundation

- Microsoft Corporation

- Open Society Foundations

- Charles and Lynn Schusterman Family Philanthropies

Domestic Policy Advisor Susan Rice and Director of Intergovernmental Affairs Julie Chavez Rodriguez will convene the first meeting of the CVI Collaborative soon. The President is calling on mayors across the country to follow the lead of these local officials by using their ARP funding or other public funds to launch and strengthen CVI programs in their communities.

Additionally, the Biden-Harris Administration will convene the first CVI Webinar Series event on June 23. The webinar series will bring together subject matter experts to discuss immediate steps communities and local organizations can take to reduce violence.

The Administration is continuing to seek a historic $5.2 billion investment in new grant funding for CVI programs through the American Jobs Plan and its FY22 discretionary budget request. The Administration is also executing on its announced changes to 26 programs across five agencies to make federal dollars and technical assistance available to CVI practitioners in the immediate term. For example, this month the U.S. Department of Housing and Urban Development (HUD) will publish guidance encouraging jurisdictions to use part of their Community Development Block Grant funds to support CVI efforts needed to combat violence as a result of the coronavirus pandemic. In July and August, the Department of Education will publish guidance explaining that school districts can draw upon the $1.22 billion in Student Support and Academic Enrichment grants and $1.26 billion in 21st Century Community Learning Centers grants to support CVI programs that serve students. This funding will supplement American Rescue Plan funds, providing CVI programs with multiple potential

funding streams to expand their work.

**Expand summer programming, employment opportunities, and other services and supports, especially for teenagers and young adults**

**American Rescue Plan Funds.** The Administration released guidance from the Department of the Treasury today and from the Department of Education last week explaining how two buckets of American Rescue Plan funding—$350 billion in state and local funding and the $122 billion in school funding—can be used for a variety of public safety strategies. Within the parameters explained in those guidance documents, State and territory, local, and Tribal governments can:

- Hire support personnel such as nurses, counselors, and social workers;

- Pay court personnel and operations costs to return to pre-pandemic operation levels;

- Provide and expand employment services, including summer jobs for

young people and programs that
provide training and work
experience for formerly incarcerated
persons and other individuals who
live in communities most impacted
by high levels of violence;

- Provide and expand summer
  education and enrichment programs,
  including summer camp;

- Scale up wraparound services—such
  as housing, medical and mental
  health care, trauma-informed care,
  substance use disorder treatment,
  food assistance, and job placement
  services—for victims of crime, young
  people, formerly incarcerated
  persons, and individuals and
  households facing economic
  insecurity due to the pandemic; and

- Establish or expand full-service
  community schools.

The President urges jurisdictions to use
these resources now for strategies to
prevent violence.

**Youth Workforce Development
Funds.** Young people are
disproportionately likely to be involved

in gun violence, either as perpetrators or victims. We also know that youth employment programs, including summer jobs programs, can reduce their involvement in violence by as much as 35% or 45%. The Biden Administration is committed to funding workforce development programs to keep young people safe and give them a path to success.

On June 10, the Department of Labor awarded $89 million through its YouthBuild program to provide pre-apprenticeship opportunities for young people ages 16-24. 68 grantee organizations will serve more than 5,000 youth in dozens of cities. The young people will split their time between workplace training and the classroom, where they earn their high school diploma or equivalency degree and prepare for postsecondary opportunities. The grants support training and employment in in-demand industries, including construction, healthcare, information technology, manufacturing, logistics, and hospitality. YouthBuild includes a significant wrap-around support

system, such as mentoring, trauma-informed care, follow-up education, employment, and personal counseling services.

The Department of Labor on June 10 also awarded $20 million through its Workforce Pathways for Youth program to expand workforce development activities that serve youth ages 14-21 during "out of school" time (non-school hours). Through these grants, four national grantee organizations will serve approximately 7,000 participants in multiple cities across the country. The organizations will provide career exploration services; work readiness training; career counseling; work experience (internships, summer and year-round employment, pre-apprenticeships, and registered apprenticeships); mentoring; and assistance in placing youth in employment, education, or training.

**Help formerly incarcerated individuals successfully reenter their communities**

Formerly incarcerated individuals face

an uphill climb in landing a job. Many employers are reluctant to hire them out of stigma, fear, or concern that they lack the skills needed for the job. But employment is a key to formerly incarcerated individuals' successful reentry into their communities. Individuals who secure employment after release have much lower recidivism rates than those who do not. Good, stable jobs promote public safety. That is why the Administration is taking concrete steps to facilitate employment and associated services, such as housing assistance, for people who are formerly incarcerated.

**Investments to help formerly incarcerated individuals find quality jobs.** On June 21, the Department of Labor awarded $85.5 million to help formerly incarcerated adults and young people in 28 communities transition out of the criminal justice system and connect with quality jobs. This includes $60 million for Pathway Home projects that will serve approximately 6,000 adults. By enabling services to begin while participants are still incarcerated and continue services post-release, the

Pathway Home initiative eliminates the gap between release from incarceration and enrollment into a reentry program. Participants are taught job readiness and job search strategies and receive apprenticeships and occupational training. The Department also awarded $25.5 million in Young Adult Reentry Partnership grants to organizations that will help provide education and training services to young adults between 18-24 who were previously involved with the justice system or who left high school before graduation. The program will serve approximately 3,000 young people, offering accelerated and work-based learning such as registered apprenticeships in high-demand occupations with living wages. Grantees reduce barriers to labor market entry by providing career exploration activities, case management services, legal and other supportive services, and both job preparation and placement. Priority was given to organizations serving communities with high rates of poverty and crime.

**Expanding Federal Hiring of**

**Formerly Incarcerated Persons:** The Office of Personnel Management (OPM) will evaluate the existence of any barriers faced by formerly incarcerated persons in accessing federal employment and consider whether the federal government should take further action as appropriate, including creating a new "Schedule A" excepted service hiring authority for formerly incarcerated persons. This Schedule A hiring authority would allow federal agencies to hire qualified individuals for any job opening through the non-competitive, excepted service hiring process. Schedule A appointments are one-year temporary appointments with good benefits that can be extended for an additional year. Schedule A positions equip people with the skills and experience to become more competitive in the job market. Schedule A hiring authority has previously been created for veterans, people with disabilities, individuals on work release from incarceration, and people hired in direct response to the effects of the COVID-19 pandemic.

**Implementing "ban the box"**

**policy.** OPM will also publish proposed regulations to implement the Fair Chance to Compete for Jobs Act of 2019's "ban the box" policy. The Fair Chance Act prohibits federal employers and federal contractors in all three branches of government from inquiring into arrest and conviction history until they have made a conditional job offer.

**Hiring Second Chance Act Fellow.** The Department of Justice plans to post an application next month for a formerly incarcerated individual to work at DOJ as a Second Chance Act visiting fellow. This is a unique opportunity to draw on the expertise of a formerly incarcerated person as a policy advocate, legal or social services provider, or academic focusing on the successful reintegration of people returning home to their communities after incarceration. The fellow will develop innovative strategies that build upon and improve DOJ's investments in reentry and reintegration.

**Leveraging tax credits to incentivize hiring of formerly incarcerated individuals.** The Department of Labor

and Department of the Treasury will help employers leverage the Work Opportunity Tax Credit (WOTC), which includes incentivizes to hire formerly incarcerated individuals. Under WOTC, employers can receive up to a $2,400 credit against federal income taxes for hiring a person within one year of their conviction or release from prison for a felony offense. The Departments of Labor and Treasury will encourage employers to take up this opportunity to hire formerly incarcerated individuals. Specifically, within 90 days, the Departments will issue guidance, provide technical assistance to state workforce agencies, and release materials on ways employers can leverage this tax credit and other resources, such as the Federal Bonding Program and the American Rescue Plan's Employee Retention Credit (ERC). For example, a small business that hires someone who was released in the last twelve months and employs them through the second half of the year could qualify for a credit of up to $16,400 per worker by claiming both the WOTC and the ERC. The Department of the Treasury will also

revise online materials to make it easier to claim the tax credit.

**Addressing the housing needs of returning citizens.** Today, HUD Secretary Marcia L. Fudge is issuing a letter outlining actions that HUD is taking to improve public safety by addressing the housing needs of returning citizens, including through the recently awarded 70,000 emergency housing vouchers funded by the American Rescue Plan. The letter clarifies that returning citizens that are at-risk of homelessness are among the eligible populations for these emergency housing vouchers and encourages public housing authorities and their Continuum of Care partners to ensure that eligible returning citizens are given consideration for these vouchers. The letter also discusses additional steps that HUD is taking to improve access to housing for returning citizens and people with criminal records.

###

EXHIBIT B

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Order**

ATF O 5370.1E

SUBJECT:   FEDERAL FIREARMS ADMINISTRATIVE
ACTION POLICY AND PROCEDURES

DATE: 01/28/2022
OPI RECERTIFICATION
DATE: 01/28/2027

OPI: 700000

TO:   All Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Industry Operations Offices

1. **PURPOSE.** This order provides fair and consistent guidelines for administrative remedies for violations disclosed relative to inspections of Federal firearm licensees (FFLs).

2. **CANCELLATION.** This order cancels ATF O 5370.1D, Federal Firearms Administrative Action Policy and Procedures, dated 10/02/2019.

3. **AUTHORITIES.**

   a.   Title 28 U.S.C. § 599A.

   b.   Title 28, CFR, Sections 0.130 and 0.131.

4. **DISCUSSION.** This order identifies the minimum guidelines for administrative action but does not address every potential scenario or violation. Each Field Division's Director of Industry Operations (DIO) should take the appropriate actions to ensure FFL compliance and the protection of the public through proper application of this order. While it is desirable to have definitive guidelines in this area, every inspection is unique and requires individual analysis.

   a.   Administrative action is defined as a warning letter, warning conference, revocation, imposition of civil fine, and/or suspension of a federal firearms license, including a recommendation of denial of an original or renewal application, and alternate action to revocation. The issuance of ATF F 5030.5, Report of Violations, is not an administrative action but rather a documentation of Gun Control Act violations disclosed during an inspection.

   b.   This policy is for internal guidance only and is law enforcement sensitive. It is not intended—and should not be construed—to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States and its agencies, officers, or employees.

5. **BACKGROUND.** This order sets forth the general policy guidelines for administrative action recommendations for FFLs.

   a.   This is a national policy for determining administrative actions to promote consistent and equitable resolutions of violations of the Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44. The field should pursue all administrative actions in relation to the cited violations and their circumstances. The nature of the violations, their impact on public safety, and ATF's ability to reduce violent crime are significant considerations in determining the appropriate administrative action. ATF may also consider aggravating and mitigating factors. This order will allow for the most efficient use of ATF resources while maintaining the goal of compliance throughout the industry.

ATF O 5370.1E
01/28/2022

b.   ATF inspects FFLs to ensure compliance with Federal firearms laws, educate them on their responsibilities and verify they are complying with the provisions of the GCA and its implementing regulations. Compliance with the GCA by the firearms industry is an essential part of combatting crime gun violence and enhancing public safety as outlined in ATF's Strategic Plan.

c.   Pursuant to 18 U.S.C. § 923(e), ATF may revoke a federal firearms license for willful violations of the GCA and its implementing regulations, including all of the violations discussed in this order and any other violation of the GCA. The term willful means a purposeful disregard of, or a plain indifference to, or reckless disregard of a known legal obligation. ATF may also revoke or suspend a license or impose a civil fine for certain violations of the Brady Handgun Violence Protection Act and the Child Safety Lock Act of 2005. See 18 U.S.C. §§ 922(t)(5) and 924(p).

6.   REFERENCES.

a.   ATF O 1100.168C, Delegation Order—Delegation of Authorities within the Bureau of Alcohol, Tobacco, Firearms and Explosives, dated 11/5/18.

b.   ATF O 3200.1B, Monitored Case Program, dated 10/20/21.

c.   ATF O 5000.19A, Industry Operations Manual, dated 4/4/18.

d.   Title 27 CFR Part 478.

e.   Title 18 U.S.C. § 922.

f.   Title 18 U.S.C. § 923.

g.   Title 18 U.S.C. § 924.

7.   POLICY.

a.   Unified Administrative Action Policy and Procedures.

(1)   This order establishes a unified plan of action for resolution of violations through administrative action. The plan groups types of violations into categories for which specific administrative actions are recommended.

(2)   This national policy will assist Special Agents in Charge (SACs), DIOs, Area Supervisors (AS), and Industry Operations Investigators (IOIs) in making appropriate recommendations.

(3)   Each inspection has unique and sometimes complex circumstances. Therefore, even in cases where violations appear willful, the field should consider the following questions when recommending administrative action:

(a)   Is the FFL willing/able to achieve and maintain voluntary compliance?

(b)   Will the continued operation of the FFL pose a threat to public safety or contribute to violent crime and/or other criminal activities?

(c)   Is the FFL taking responsibility for violations and willing to work with ATF to correct them?

(d)   Is the FFL's failure to properly complete and maintain records directly impacting the traceability of firearms?

(e)    Do the violations have a nexus to a person subject to the Federal firearms disabilities contained in either 18 U.S.C. §§ 922(g) or 922(n) (hereinafter "prohibited person")?

(4)    ATF has zero tolerance for willful violations that greatly affect public safety and ATF's ability to trace firearms recovered in violent crimes. Therefore, revocation is the assumed action, unless extraordinary circumstances exist, when violations are cited that include:

    (a)    Transfer of a firearm to a prohibited person knowing or having reasonable cause to believe that the transferee is a prohibited person.

    (b)    Failure to: 1) contact the National Instant Criminal Background Check System (NICS) (or equivalent State Point of Contact (POC)) for a background check prior to transfer of a firearm; 2) obtain a qualifying alternative permit in lieu of a background check; or 3) wait 3 business days after contacting NICS or the appropriate POC where the system has not notified the FFL that the transfer may proceed. This includes:

        (1)    Return of consignment firearms,

        (2)    Pawn redemption of firearms,

        (3)    Acceptance of an invalid alternate permit or nonqualifying alternative permit in lieu of NICS,

        (4)    Transfer of a firearm more than 30 days after an initial NICS check without conducting a new NICS check,

        (5)    Transfer of a firearm prior to receiving a final NICS or applicable State POC response where three days have not elapsed since the FFL contacted the system,

    (c)    Failure to respond to a firearm trace request within 24 hours after receipt of request.

    (d)    Falsification of records required under the GCA or making a false or fictitious written statement in the FFL's required records or in applying for a firearms license. Withholding or misrepresenting material information in applying for a license.

    (e)    Refusing ATF right of entry and inspection during hours of operation at the licensed premises.

b.    **Report of Violations.**  The field will issue a Report of Violations to the FFL for all violations identified during the inspection. This action does not require a determination of willfulness.

c.    **Warning Letter.**  The field may issue a warning letter (WL) when violations of 27 CFR Part 478 merit a formal documented action on the part of ATF beyond the Report of Violations. The AS may decide that a WL is not necessary based on the nature and number of violations, improvement in compliance with firearms laws and regulations, FFL's compliance history, time elapsed since previous inspection and other relevant factors. Sending a WL to an FFL does not require a determination of willfulness. Violations that generally merit a WL as the minimum administrative action include, but are not limited to, the following:

ATF O 5370.1E
01/28/2022

(1)    Failure to timely and/or correctly maintain records of receipt, manufacture, importation, or other acquisition on 5 percent or more of the FFL's total acquisitions during the inspection period, with a minimum of 10 instances.

(2)    Failure to timely and/or correctly maintain records of sales or other dispositions on 5 percent or more of the FFL's total dispositions during the inspection period, with a minimum of 10 instances.

(3)    Failure by the FFL to obtain complete and accurate information for any item(s) on Forms 4473, question 21, or failure to ensure the buyer signs and dates the Form 4473 (to include failing to have the buyer recertify their answers if the transfer takes place on a different date than the original signature) on 5 percent or more of the Forms 4473 examined, except when any purchaser is prohibited.

(4)    Failure to record valid and complete transferee identification on 10 percent or more of the Forms 4473 examined.

(5)    Failure to record any transferee identification on 10 percent or more of the Forms 4473 examined.

(6)    Failure to file ATF F 3310.4, Report of Multiple Sale or Other Disposition of Pistols and Revolvers or ATF F 3310.12, Report of Multiple Sale or Other Disposition of Certain Rifles, (Southwest Border states only) when legally required and with a minimum of five instances.

(7)    Missing firearms after inventory reconciliation (e.g., no records of disposition, required or otherwise).

(8)    Failure to retain required GCA records for transferred firearms for period of time specified by regulation.

(9)    Transfer of a rifle/shotgun to a resident of another State that violates State law.

(10)   Failure to obtain a completed Form 4473 and failure to conduct a NICS check or obtain alternative permit for:

    (a)    The transfer of a firearm to a law enforcement officer for personal use, if the transferee is not prohibited; or

    (b)    The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole proprietor) if the transferee is not prohibited.

(11)   FFL fails to notify ATF about a change of control.

(12)   FFL is engaged in an activity not authorized by the Federal firearms license (e.g., engaging in manufacturing firearms without a manufacturer's license).

(13)   Failure to timely report upon discovery of the theft or loss of a firearm to either ATF or local law enforcement.

(14)   Failure to record NICS or Point of Contact background check information on 10 percent or more of Forms 4473 examined, with a minimum of 10 instances.

(15)   ATF has previously cited the FFL in a Report of Violations within the previous 5 years and the current inspection reveals repeated similar violation(s) with no significant improvement.

d.    <u>Warning Conference</u>. A warning conference (WC) lets a DIO or AS assess the FFL's potential to achieve compliance and determine any potential risks to public safety and firearm traceability. It does not require a determination of willfulness.

Page 4

ATF O 5370.1E
01/28/2022

(1)  A WC is generally appropriate when the FFL has previously been the subject of a WL or WC, and the current inspection indicates similar repeat violations. It may also be appropriate to hold a WC for an FFL without a history of previous violations or a WL in certain circumstances. The DIO may decide that a WL or no administrative action is appropriate based on the nature and number of violations, improvement in compliance with firearms laws and regulations, compliance history, time elapsed since any previous administrative action, and other relevant factors.

(2)  If the violations involve a corporation, ATF must invite a corporate responsible person to the WC.

(3)  During the WC, ATF should provide the FFL with specific instructions to achieve GCA compliance and emphasize the mutual goal of ATF and the industry to safeguard the public.

(4)  Examples of violations that generally merit a WC as the minimum administrative action, include but are not limited to the following:

(a)  Transfer of a firearm other than a rifle or shotgun (including a frame or receiver) to an out-of-state resident.

(b)  Failure to mark imported or manufactured firearms appropriately.

(c)  Failure to report theft or loss to both ATF and local law enforcement.

(d)  Conducting business at locations not authorized as an extension of the licensed business premises.

(e)  Failure to obtain a completed Form 4473 and failure to conduct a NICS check or obtain alternative permit for:

(i)  The transfer of a firearm to a law enforcement officer for personal use, if the transferee is not prohibited, and is a repeat violation; or

(ii)  The transfer of a firearm out of business inventory to an FFL responsible person (other than a sole proprietor), if the transferee is not prohibited, and is a repeat violation.

(f)  FFL has previously been the subject of a WL or WC within the previous 5 years and the current inspection reveals repeated similar violation(s) with no significant improvement.

(5)  If the FFL does not respond to the WC notification letter and there is evidence the violations are willful, the DIO should proceed with revoking (or denying a renewal application for) the Federal firearms license.

(6)  Additionally, the DIO may decide after meeting with the FFL, or after offering an opportunity for compliance, to proceed with revocation (denial) if the DIO believes the public interest is best served by revoking or denying renewal of the Federal firearms license. In any situation in which the DIO seeks revocation or denial of renewal, notification of the proposed course of action must be made through Field Management Staff, FISB (fmsisb@atf.gov).

(7)  In instances in which it is determined that the violations were not willful and/or the FFL is likely to come into compliance, the WC shall be the final administrative action.

ATF O 5370.1E
01/28/2022

(8)     The WC may include ATF Counsel and will discuss means to achieve compliance. The AS or DIO may request the FFL submit written proposals designed to achieve GCA compliance.

e.     Revocation Under 18 U.S.C. § 923(e).

(1)     ATF must establish willfulness to proceed with revocation under 18 U.S.C. § 923(e).

(2)     ATF does not have to establish a history of prior violations to demonstrate willfulness. Accordingly, ATF will revoke a federal firearms license, absent extraordinary circumstances on initial violations, if those violations inherently demonstrate willfulness, such as transferring a firearm to a prohibited person; failing to run a background check prior to transferring a firearm to a non-licensee; falsifying records; or making false statements; failing to respond to an ATF tracing request; refusing to permit ATF to conduct an inspection; or allowing a straw sale of a firearm to occur. ATF may also revoke for any other willful first-time violation as it deems appropriate.

(3)     ATF should also consider revocation when an FFL has willful violation(s) of the GCA and when factors are present that have a direct impact on public safety such as:

(a)     A large number of crime gun traces as compared to dispositions,

(b)     Short time to crime traces,

(c)     Traces from violent crimes, or,

(d)     International traces.

(4)     ATF can establish the knowledge element of willfulness in several ways:

(a)     Establish the FFL has a history of similar, repeat violations, and documentation that an IOI discussed them with the FFL. The FFL's compliance history can include other efforts by ATF (including qualification inspections) to inform the FFL about its legal responsibilities.

(b)     Use inspection reports to establish willfulness even if the inspection found no violations (i.e., acknowledgment of Federal firearms regulations).

(c)     Statements or admissions communicated by the FFL or its employee(s), as well as actions by the FFL or its employee(s) during an inspection that demonstrate knowledge of regulations and concurrence with the IOI's findings.

(d)     Publications and information provided to the FFL which explain the FFL's legal responsibilities.

(e)     Demonstrate that the FFL has complied with the specific regulation on other occasions.

(f)     Demonstrate that the FFL has substantial experience as an FFL.

(5)     ATF Field Counsel must evaluate the facts and circumstances surrounding an FFL's alleged violation(s). During Counsel's review, a copy of the Industry Operations Monitored Case Briefing Paper will be submitted to FISB. It can

ATF O 5370.1E
01/20/2022

be later removed from the Monitored Case Program (MCP) if the Field Division decides not to pursue MCP actions or if Counsel determines that the case does not satisfy the elements of the violations. (See 10.d.(3) for Regional Associate Chief Counsel (ACC) concurrence).

(6)     Revocation is an appropriate licensing action under section 923(e) and is appropriate in response to the discovery of the following willful violations which directly impact the public.

The below five items (a)-(e) merit revocation of the license if committed willfully unless extraordinary circumstances exist. In extraordinary circumstances, an alternative recommendation may be made. All inspections with instances of (a)-(e) violations below, must come to DAD (IO) for approval through the MCP. NOTE: The fact that there is only a single violation of subsections (a)-(e) below does not, in and of itself, constitute extraordinary circumstances and will not be an acceptable reason for an alternate recommendation.

(a)     Transfer of a firearm to a prohibited person while knowing or having reasonable cause to believe that the transferee is a prohibited person.

(b)     Failure to conduct a NICS check or obtain alternative permit or fail to retrieve a NICS (or equivalent State POC background check system) response prior to the transfer of a firearm. This includes:

(1)     Return of consignment firearms,

(2)     Pawn redemption of firearms,

(3)     Acceptance of an invalid alternate permit or nonqualifying alternative permit in lieu of NICS,

(4)     Transfer of a firearm after an initial NICS check 30-day expiration, without conducting a new NICS check,

(5)     Transfer of a firearm prior to receiving a final NICS response or applicable State POC background response where three days have not elapsed since the FFL contacted the system,

(c)     Failure to respond to a firearm trace request within 24 hours after receipt of the request. (Contact National Tracing Center to obtain necessary information to fully evaluate potential failure of FFL to respond to a trace request).

(d)     Falsification of records required under the GCA or making a false or fictitious written statement in the FFL's required records or in applying for a firearms license. Withholding or misrepresenting material information in applying for a license.

(e)     Refuse ATF right of entry and inspection during hours of operation at the licensed premises.

Revocation is also an appropriate licensing action in response to the discovery of the below willful violations:

(f)     Allow an employee who is a prohibited person to have actual or constructive possession of a firearm while knowing or having reasonable cause to believe that the employee is a prohibited person.

Page 7

ATF O 5370.1E
01/28/2022

(g)    The FFL transfers a firearm knowing or having reasonable cause to believe that the transferee of record is not the actual buyer (i.e. a straw purchase).

(h)    Failure by the FFL to create a required GCA record, or discontinued use of required GCA records.

(i)    Failure to execute an ATF Form 4473.

(j)    Failure to account for acquired firearms which records indicate were in inventory within the previous 5 years after reconciliation for which disposition could not be accounted for in required GCA records (e.g. acquisition and disposition record, Form 4473) and is a repeat violation of increased frequency.

(k)    Discovery of a firearm with an obliterated serial number in FFL's inventory.

(l)    Transfer of a firearm to an underage person.

(m)    The FFL has been the subject of a WC in lieu of Revocation within the previous 5 years and the current inspection reveals repeated similar violations(s) with no significant improvement.

(n)    Any other GCA violation not specifically addressed in this order where revocation may be appropriate.

f.    **Fines/Suspensions/Revocation under 18 U.S.C. §§ 922(t) or 922(z).**

(1)    ATF may revoke, suspend, and/or impose a civil fine for certain knowing violations of the Brady Handgun Violence Prevention Act and the Child Safety Lock Act of 2005.  See 18 U.S.C. §§ 922(t), 922(z) and 924(p).  In each situation, the proposed sanction (revocation, suspension, and/or fine) must be specifically spelled out in the Notice to Revoke or Suspend License and/or Impose a Civil Fine.  The FFL has the same rights to review as in other GCA administrative hearings.

(2)    ATF can revoke, suspend, and/or fine an FFL pursuant to 18 U.S.C. § 922(t)(5).  This allows for revocation, suspension for not more than 6 months, and/or a civil fine for the transfer of a firearm and failure to conduct a NICS check required by 18 U.S.C. § 922(t)(1), where NICS was operating, and the person would have been denied had a NICS check been conducted.  The transfer of the firearm and the failure to conduct the NICS check must be done knowingly.

(3)    ATF can revoke, or suspend, and/or fine an FFL pursuant to 18 U.S.C. § 924(p) for failure to comply with 18 U.S.C. § 922(z)(1) (providing a secure gun storage or safety device with each transfer of a handgun).  With certain exceptions, § 924(p) allows for the revocation, suspension for not more than 6 months, and/or a civil fine for the knowing transfer of a handgun to a non-licensee without a secure gun storage or safety device.

(4)    A Notice to Revoke or Suspend License and/or Impose a Civil Fine will be issued when violations of 18 U.S.C. 922(t)(1), 922(z) and/or 924(p) are cited.  Except in situations approved by the DAD (IO), all three options on the form will be selected and the maximum fine and suspension will be proposed.  All settlements prior to or after a hearing, must be approved by the DAD (IO) and Deputy Chief Counsel prior to finalizing any agreement.


ATF O 5370.1E
01/28/2022

make offers of settlement or offers of a final resolution involving an agreed upon revocation before or after the issuance of a Notice to Revoke/Deny. Such submissions of settlements/offers are required to occur outside of an administrative hearing and require DAD, (IO) approval. An example of settlement could include a request for a temporary closure period when the FFL institutes remedial measures.

(2) Following the issuance of the Notice to Revoke/Deny a DIO may consider alternatives to issuing a Final Notice of Denial of Application, Revocation, Suspension, and/or Fine of a Federal firearms license with the concurrence of the DAD (IO). The DIO should consult and work closely with Field Counsel on the negotiation of terms and conditions to which ATF may appropriately agree to settle or resolve. The DAD (IO) must approve the final written settlement document and if the revocation is based on the violations outlined in paragraph 7.e.(6)(a)-(e), get approval from the Director prior to the field proceeding. Settlements, barring extraordinary new circumstances being presented, are not appropriate for cases that involve transferring to a prohibited person, failing to run a background check, falsifying records, or making false statements, failing to respond to an ATF tracing request, and/or refusing to permit ATF to conduct and inspection.

5. **GENERAL GUIDANCE.** The Division management team may consider the appropriate administrative actions. The DIO will seek advice of Field Counsel and the ACC (East/Central/West), when seeking Administrative Actions for DAD (IO) approval and the Assistant Director, Field Operations (FO) when considering the appropriate administrative action.

a. This order does not mandate doing any administrative action in a sequential or consecutive order. For example, a WC may be held or revocation sought after the first inspection if violations impact public safety or obstruct firearms traceability. Conversely, a WL may be issued even if the prior inspection resulted in a WC.

b. The DIO or AS will conduct WCs.

c. The DIO will ensure the timely initiation of administrative action. For inspections that are alternates to revocation for items specified in paragraph 7.e.(6)(a)-(e) above, the actions need to occur within 30 days of the notice from the DAD (IO) that the Director has been briefed and concurs with the action. The post-conference letter for cases requiring a WC should be issued no later than 90 days after final DIO review unless there are mitigating circumstances. The AS should issue a WL within 15 days of his or her review.

d. The area office should submit cases involving potential denials/revocations to the DIO within 30 days of the inspection submission date. The DIO has 120 days, inclusive of Counsel review, upon receipt of the inspection to issue the Notice to Revoke/Deny. Field Counsel will have a maximum of 60 days to review and prepare the Notice in final form for submission to the DIO for review and issuance. The DAD (IO) will be notified by the DIO via FISB if these periods are not met.

e. Criminal violations and violations that pose a danger to the public should be grounds for revocation, and the field must immediately notify ATF criminal enforcement. This may include situations where firearms are subject to seizure and forfeiture. This order does not prevent division management from pursuing simultaneous regulatory and criminal actions with the concurrence of the U.S. Attorney's Office. There may be instances where the Government resolves the case through a revocation and a criminal plea. If ATF pursues revocation, it will follow procedures, including those required by ATF O 3200.1B, Monitored Case Program.

i.  If the DIO issues a Notice to Revoke/Deny and the FFL requests a hearing and then withdraws the request, or if the FFL does not request a hearing, the DIO will issue a Final Notice of Revocation.

9.  HEADQUARTERS POLICY REVIEW AND ALTERNATE RECOMMENDATIONS.

a.  ATF must handle inspections and investigations with recommendations for administrative actions that meet the criteria of the MCP (e.g., revocations, denials, imposition of civil fine, suspension and/or alternate to revocation/denial etc.) per ATF O 3200.1B, Monitored Case Program.

b.  Alternate recommendations to revocation (see section 7.h) require concurrence of the DAD (IO) before proceeding. Alternate recommendations to revocation for items specified in 7.e.(6)(a)-(e) above, will be briefed to the ATF Director, or their designee, by the DAD (IO) on a monthly basis. NOTE: One instance of a violation of 7.e.(6)(a)-(e) above does not constitute extraordinary circumstances and will not be an acceptable reason for an alternate recommendation.

10. FIELD RESPONSIBILITIES. Responsibilities for field personnel and management are as follows:

a.  Industry Operations Investigator. The IOI:

(1)  Will conduct the inspection per established ATF guidelines, including use of the approved case management system. If an IOI uncovers violations, the IOI will obtain and preserve all available evidence and document the violations to show if the violations were willful, including copies of Forms 4473 and Acquisition and Disposition records since only documented violations will be cited in the Notice. The IOI will then make the appropriate recommendation based on the guidelines contained herein and forward the inspection to the AS.

(2)  Must communicate with and notify the AS of violations, findings, and other circumstances impacting public safety upon discovery.

b.  Area Supervisor. The AS:

(1)  Will review all firearms inspection reports and associated exhibits maintained within the approved case management system to ensure the IOI's recommendation meets established guidelines and evidentiary requirements, they adequately performed all relevant inspection work steps, and they correctly entered all necessary data.

(2)  Must communicate with the DIO and notify the DIO of violations, findings, and other circumstances impacting public safety upon discovery.

(3)  Independently evaluate the IOIs recommendation and insert their recommendation in the approved case management system. If they disagree with the IOI recommendation, the AS will document the reason(s) within the recommendation section of the case management system. The AS must submit cases meriting WC, revocation, denial, fine, or suspension to the DIO within 30 days of the IOI submission date.

c.  Director of Industry Operations. The DIO shall:

(1)  Review all inspections that recommend a WC and/or alternate thereof. The DIO shall complete a recommendation in the approved case management system and return to the AS within 15 calendar days.

(2)  Review all inspections resulting in a recommendation of denial, revocation, suspension, fine, or alternate to revocation and complete a recommendation in

ATF O 5370.1E
01/28/2022

the approved case management system. Additionally, the DIO must provide justification through the Industry Operations Monitored Case Risk Assessment Briefing Paper and submit to FISB.

(3) Request legal advice from Field Counsel in all potential alternate recommendations to revocation. Request Field Counsel and ACC legal advice for all denials, revocations, suspensions, and fines.

(4) Advise the SAC of any administrative actions that deal with potential denials, revocations, suspensions, fines, alternates to revocations, and other administrative resolutions.

(5) Following a hearing requested pursuant to either 27 C.F.R. §§ 478.72 or 478.74, the DIO must conclude whether the Government has met its burden of proof by a preponderance of the evidence that the elements required to issue a Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License, ATF Form 5300.13. If the DIO believes such elements have not been proven, including the willfulness required to sustain a denial under 18 U.S.C. § 923(d)(1)(C) or revocation under 18 U.S.C. § 923(e), the DIO must fully brief the DAD (IO) as to the basis for this determination.

d. Counsel.

(1) At the request of the DIO, Field Counsel will review all inspection reports and exhibits in the approved case management system and provide legal advice in all administrative actions.

(2) The DIO and counsel should use discretion in determining which violations to allege and only allege willful violations in the Notice to Revoke under 18 U.S.C. § 923(e). As noted above, ATF may also revoke or suspend a license or impose a civil fine for certain violations of 18 U.S.C. §§ 922(t)(5) and 924(p). In certain instances, it may not be in the interest of the Government to cite isolated willful violations where there are adequate willful violations to sustain a revocation.

(3) The ACC for the applicable Field Division will review and approve all proposed Notices and administrative resolutions for legal soundness, and compliance with this policy prior to final submission to MCP and implementation of these actions.

e. Special Agent in Charge. The SAC has ultimate division responsibility to ensure that this national policy is properly enforced. To this end, they may establish additional controls in their division.

11. AVAILABILITY. The forms outlined in this order are available at ATFConnect>Forms and Policy>Forms. The manual outlined in this order is available at ATFConnect>Directorates>Field Operations>Industry Operations>IOI Manual.

12. RECORDS RETENTION REQUIREMENTS. Documents outlined in this order must be retained in accordance with ATF O 1340.5A, Records Management Program and ATF O 1340.7A, ATF Records Control Schedule.

13. QUESTIONS. If you have any questions regarding this order, please contact Field Management Staff, 202-648-8400.

GEORGE LAUDER
Digitally signed by GEORGE LAUDER
Date: 2022.01.28 17:22:07 -05'00'
Assistant Director
(Office of Field Operations)

Page 12

EXHIBIT C

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Report of Violations**

**FFL**: PRECISION TACTICAL ARMS COMPANY LLC
**Inspection**: FCI-27293
**Date Generated**: 11/3/2021
**RDS Key**: 1-59-26145
**Lead Industry Operations Investigator**: Thomas McCarthy

| | Regulation | Corrective Action(s) | Number of Forms | Number of Instances |
|---|---|---|---|---|
| 1 | 18 U.S.C. 923(g)(5)(A): Failure to timely file required AFMER | In the future, complete and submit required ATF Form 5300.11, Annual Firearms Manufacturing and Exportation Report, by April 1 for the previous calendar year ending on December 31. | | 1 |
| 2 | 27 CFR 478.92(a)(1)(ii): Failure to properly mark firearm(s) with certain additional information | Properly identify each firearm manufactured by engraving, casting, stamping, or otherwise conspicuously placing on the firearm a serial number, model (if designated), caliber/gauge, name of the manufacturer, and city and state of the manufacturer. ATF Ruling 2013-3 allows licensed manufacturers to adopt the serial number, model, and/or caliber/gauge already identified on a firearm without seeking a marking variance. | | 22 |
| 3 | 27 CFR 478.92(a)(2): Failure to properly mark firearm frame(s) or receiver(s) with required markings | A firearm frame or receiver that is not a component part of a complete weapon must be properly identified with a serial number, model (if designated), caliber/gauge (if designated), name of the manufacturer, and city and state of the manufacturer. ATF Ruling 2012-1 allows the manufacturer to omit the model designation and caliber or gauge without a variance if that information is unknown at the time the frame or receiver is marked. | | 3 |
| 4 | 27 CFR 478.123(b): Failure to maintain an accurate/complete/timely licensee disposition record | Accurately, completely & timely record all required future firearm disposition information. Per ATF Ruling 2016-3, when a manufacturer makes changes to the model, type, caliber, size, and/or gauge of a frame, receiver, or assembly of a firearm, the firearm must be logged out of the A&D record to itself on the date of the change or conversion. The new firearm information shall then be recorded on a separate line of the A&D record. | | 31 |
| 5 | 27 CFR 478.123(d): Failure to maintain an accurate/complete/timely nonlicensee disposition record | Accurately, completely & timely record all required future firearm disposition information. | | 28 |
| 6 | 27 CFR 478.123(a): Failure to maintain an accurate/complete/timely manufacture or acquisition record | Accurately, completely & timely record all required future firearm acquisition information. Per ATF Ruling 2016-3, when a manufacturer makes changes to the model, type, caliber, size, and/or gauge of a frame, receiver, or assembly of a firearm, the licensee must record the new firearm information on a separate line of the A&D record. | | 414 |
| 7 | 27 CFR 478.124(c)(4): Failure to record firearm information on an ATF F 4473 | Ensure all required firearm identification information is obtained and accurately recorded on all future ATF Forms 4473, Section A. | 90 | 105 |

| | | | | |
|---|---|---|---|---|
| 8 | 27 CFR 478.124(c)(1): Failure to obtain a completed ATF F 4473 | Ensure all required ATF Form 4473 Section B items are completed/provided by the transferee on all future transactions.<br><br>Ensure the transferee provides required signature and date, Section D, for all transactions taking place on a date different from when Section B was certified. | 3 | 3 |
| 9 | 27 CFR 478.21(a): Failure to complete forms as prescribed | Ensure all ATF Form 4473 items, as required by form headings and instructions, are accurately completed on all future transactions.<br><br>Ensure the transferee provides required signature and date, Section D, for all transactions taking place on a date different from when Section B was certified. | 33 | 34 |
| 10 | 27 CFR 478.124(c)(3)(i): Failure to verify or record Identification document on ATF F 4473 | Ensure all required transferee/buyer identification information is obtained and accurately recorded on all future ATF Forms 4473, Section C.<br><br>Ensure to record the transferee's military identification card in box 26.a and official military PCS orders in box 26.c when the transferee is a member of the armed forces on active duty, but has a driver's license or identification card from another state. | 26 | 27 |
| 11 | 27 CFR 478.124(c)(3)(iv): Failure to record NICS contact information on an ATF F 4473 | Ensure all required NICS/POC background check information is obtained and accurately recorded on all future ATF Forms 4473, Section C. | 6 | 7 |
| 12 | 27 CFR 478.102(c): Failure to initiate a new NICS check after 30-day lapse of initial check | Execute and accurately record (on an ATF Form 4473) a new NICS/POC background check, after any 30-day expiration of a previously conducted NICS/POC check, on all future over-the-counter firearm transactions. | 1 | 1 |

**Signature(s)**

My signature below certifies that on Wednesday, November 3, 2021 ATF IOI Thomas McCarthy reviewed the above information with me and answered my questions regarding this information. I understand I can receive a copy of this for my records. I understand that this is only a general overview of the violations and that I will be responsible for familiarizing myself with all of the laws and regulations governing my licensed/permitted business.

Printed Name:
WARD GRAHAM LEWIS Jr.

Signature Date:
Wednesday, November 3, 2021

Report of Violations Instance Details

Report of Violations Instance Details

| | Regulation/Violation | Instance Details | Version |
|---|---|---|---|
| 1 | 18 U.S.C. 923(g)(5)(A): Failure to timely file required AFMER | The Annual Firearms Manufacturing and Exportation Report (AFMER) for calendar years 2019 and 2020 were not submitted timely. Both reports were submitted via email on 4/24/2021. | |
| 2 | 27 CFR 478.92(a)(1)(ii): Failure to properly mark firearm(s) with certain additional information | PRECISION TACTICAL, SLR-B15, 01387, RIFLE, 6MM<br>PRECISION TACTICAL, AM-15, 21123652, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123653, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123654, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123655, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123656, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123658, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123660, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123665, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123666, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123675, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123692, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123693, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123695, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123696, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123697, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 21123699, RIFLE, 5.56<br>PRECISION TACTICAL, AM-15, 61123700, RIFLE, 5.56<br>PRECISION TACTICAL, ST15, SCR074010, RIFLE, 5.56<br>PRECISION TACTICAL, M5, US144328, RIFLE, .308<br>PRECISON TACTICAL, M5, US151789, RIFLE, 6.5<br>PRECISION TACTICAL, M5, US151790, RIFLE, .308 | |
| 3 | 27 CFR 478.92(a)(2): Failure to properly mark firearm frame(s) or receiver(s) with required markings | PRECISION TACTICAL, NONE, CAD443US, FRAME ONLY, MULTI<br>PRECISION TACTICAL, NONE, HRY601, FRAME ONLY, MULTI<br>PRECISION TACTICAL, NONE, UBH443, FRAME ONLY, MULTI | |
| | 27 CFR 478.123(b): Failure to maintain an accurate/complete/timely licensee disposition record | Disposition Not Recorded (Reconciled), GLOCK GMBH, 27, CAD443US, PISTOL, 40<br>Disposition Not Recorded (Reconciled), GLOCK GMBH, 27, HRY601, FRAME ONLY, MULTI<br>Disposition Not Recorded (Reconciled), GLOCK GMBH, 17, UBH443, FRAME ONLY, MULTI<br>Disposition Not Recorded (Reconciled), PRECISION TACTICAL, XPCC MK1, PT9-00024, RECEIVER, MULTI<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123652, RIFLE, 556<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123653, RIFLE, 556<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123654, RIFLE, 556<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123655, RIFLE, 556<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123656, RIFLE, 556<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123658, RIFLE, 556<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123660, RIFLE, 556<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123665, RIFLE, 556<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123666, RIFLE, 556<br>Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123675, RIFLE, 556 | |

| | | |
|---|---|---|
| 4 | | Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123692, RIFLE, 556 |
| | | Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123693, RIFLE, 556 |
| | | Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123695, RIFLE, 556 |
| | | Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123696, RIFLE, 556 |
| | | Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123697, RIFLE, 556 |
| | | Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123699, RIFLE, 556 |
| | | Disposition Not Recorded (Reconciled), ANDERSON MANUFACTURING, AM-15, 21123700, RIFLE, 556 |
| | | Disposition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00161, RECEIVER, MULTI |
| | | Disposition Recorded, but not Timely/Correct, SLR RIFLEWORKS, LLC, SLR-B15, 01387, RECEIVER, MULTI |
| | | Disposition Recorded, but not Timely/Correct, AERO PRECISION INC., M5, US144328, RECEIVER, MULTI |
| | | Disposition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, SCR074010, RECEIVER, MULTI |
| | | Disposition Recorded, but not Timely/Correct, AERO PRECISION INC., M5, US151789, RECEIVER, MULTI |
| | | Disposition Recorded, but not Timely/Correct, AERO PRECISION INC., M5, US151790, RECEIVER, MULTI |
| | | Disposition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00442, RECEIVER, MULTI |
| | | Disposition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116001, SHOTGUN, 12 |
| | | Disposition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116489, SHOTGUN, 12 |
| | | Disposition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116473, SHOTGUN, 12 |
| 5 | 27 CFR 478.123(d): Failure to maintain an accurate/complete/timely nonlicensee disposition record | Disposition Not Recorded (Reconciled), PRECISION TACTICAL, SLR-B15, 01387, RIFLE, 6MM |
| | | Disposition Not Recorded (Reconciled), Precision Tactical, ST15, SCR074010, RIFLE, 5.56 |
| | | Disposition Not Recorded (Reconciled), PRECISION TACTICAL, M5, US151789, RIFLE, 6.5 |
| | | Disposition Not Recorded (Reconciled), PRECISION TACTICAL, M5, US144328, RIFLE, .308 |
| | | Disposition Not Recorded (Reconciled), PRECISION TACTICAL, M5, US151790, RIFLE, .308 |
| | | Disposition Not Recorded (Reconciled), PRECISION TACTICAL, XPM4 MK4, PT15-00442, RIFLE, .223 WYLDE |
| | | Disposition Not Recorded (Reconciled), PRECISION TACTICAL, XPM4 MK4, PT15-00161, RIFLE, 6MM |
| | | Disposition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 550-1, NSN, RIFLE, 22 |
| | | Disposition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 550-1, NSN, RIFLE, 22 |
| | | Disposition Recorded, but not Timely/Correct, EASTERN ARMS, 410, 05.94210, SHOTGUN, .410 |
| | | Disposition Recorded, but not Timely/Correct, ROCK ISLAND ARMORY INC., VR80, R089921, SHOTGUN, 12GA |
| | | Disposition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 870, RS08582E, SHOTGUN, 12 |
| | | Disposition Recorded, but not Timely/Correct, SIG-SAUER, P365, 66A115858, PISTOL, 9 |
| | | Disposition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK3, 00252, RIFLE, .300 BLK |
| | | Disposition Recorded, but not Timely/Correct, GLOCK GMBH, 35, BGXS136, PISTOL, 40 |
| | | Disposition Recorded, but not Timely/Correct, SAVAGE, CUSTOM, G38990, RIFLE, .300 |
| | | Disposition Recorded, but not Timely/Correct, CZ (CESKA ZBROJOVKA), SHADOW 2, D216638, PISTOL, 9 |
| | | Disposition Recorded, but not Timely/Correct, MEGA ARMS, AR-15, MAB5452, RIFLE, 5.56 |
| | | Disposition Recorded, but not Timely/Correct, NORINCO (NORTH CHINA INDUSTRIES), 1911, 409340, PISTOL, 45 |
| | | Disposition Recorded, but not Timely/Correct, WINCHESTER, 70, 243, RIFLE, 30-06 |
| | | Disposition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK3, 00346, RIFLE, 5.56 |
| | | Disposition Recorded, but not Timely/Correct, PW ARMS, 1895 NAGANT, 06005, REVOLVER, 7.62X38 |
| | | Disposition Recorded, but not Timely/Correct, GLOCK GMBH, 19, BNKH559, PISTOL, 9 |
| | | Disposition Recorded, but not Timely/Correct, GLOCK GMBH, 35, BGXS136, PISTOL, 40 |
| | | Disposition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, THE JACK, A21859, RECEIVER, MULTI |
| | | Disposition Recorded, but not Timely/Correct, STEVENS, NONE, H1663, SHOTGUN, 20GA |
| | | Disposition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00579, RECEIVER, MULTI |
| | | Disposition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 550-1, NSN, RIFLE, 22 |

| | |
|---|---|
| 27 CFR 478.123(a): Failure to maintain an accurate/complete/timely manufacture or acquisition record | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, XPCC MK1, PT9-00024, RIFLE, 9 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, SLR-B15, 01387, RIFLE, 6MM |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, ST15, SCR074010, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, M5, US151789, RIFLE, 6.5 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, M5, US144328, RIFLE, .308 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, M5, US151790, RIFLE, .308 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, XPM4 MK4, PT15-00442, RIFLE, .223 WYLDE |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, XPM4 MK4, PT15-00161, RIFLE, 6MM |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123652, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123653, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123654, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123655, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123656, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123658, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123660, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123665, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123666, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123675, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123692, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123693, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123695, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123696, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123697, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123699, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, AM-15, 21123700, RIFLE, 5.56 |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, NONE, CAD443US, FRAME ONLY, MULTI |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, NONE, HRY601, FRAME ONLY, MULTI |
| | Acquisition Not Recorded (Reconciled), PRECISION TACTICAL, NONE, UBH443, FRAME ONLY, MULTI |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK1, PTAC00001, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK1, PTAC00081, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK1, PTAC00095, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK1, PTAC00038, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, COLT, GOVERNMENT, CV43406, PISTOL, 45 |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK2, PT-00002, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK2, PT-00003, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK2, PT-00061, RECEIVER, XPM4 MK1 |
| | Acquisition Recorded, but not Timely/Correct, SMITH & WESSON, 586-4, BSE9686, REVOLVER, .357 |
| | Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 27, CAD443US, PISTOL, 40 |
| | Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 27, HRY601, FRAME ONLY, MULTI |
| | Acquisition Recorded, but not Timely/Correct, DUCK CREEK ARMORY, INC., PT15-A, PTAC001, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK2, PT-00001, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, MAXIM 9, M9-0557, PISTOL, 9 |
| | Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, MAXIM 9, M9-0558, PISTOL, 9 |
| | Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, MAXIM 9, M9-0559, PISTOL, 9 |
| | Acquisition Recorded, but not Timely/Correct, JJCO - JOHN JOVINO CO INC., ENFIELD, UNKNOWN, F9804, RIFLE, .303 |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00145, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00148, RECEIVER, MULTI |
| | Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 22, ABNC649, PISTOL, 40 |
| | Acquisition Recorded, but not Timely/Correct, JP RIFLES, SCR-11, SCN160117, RIFLE, .224 VALKYRIE |
| | Acquisition Recorded, but not Timely/Correct, SAVAGE ARMS COMPANY, SUN CITY MACHINERY CO., LTD, STEVENS 301, 194493J, SHOTGUN, .410 |

Acquisition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 550-1, NSN, RIFLE, 22

Acquisition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 550-1, NSN, RIFLE, 22

Acquisition Recorded, but not Timely/Correct, EASTERN ARMS, 410, 05.94210, SHOTGUN, .410

Acquisition Recorded, but not Timely/Correct, BROWNING ARMS COMPANY, MIROKU, AB3, 15023ZN358, RIFLE, .243

Acquisition Recorded, but not Timely/Correct, CZ-USA, HUGLU, CZ 912, 19A3459, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, BROWNING ARMS COMPANY, MIROKU, X-BOLT, BRJP08680YM354, RIFLE, 6.5

Acquisition Recorded, but not Timely/Correct, ROCK ISLAND ARMORY INC., VR80, R089921, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 870, RS08582E, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 17, BKPD834, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 500, V1121282, OTHER, 12

Acquisition Recorded, but not Timely/Correct, SIG-SAUER, P365, 66A115858, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, H&R 1871 LLC., HAWK INDUSTRIES INC., H&R PARDNER PUMP, NZ932011, SHOTGUN, 20

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00251, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00272, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK3, 00252, RIFLE, .300 BLK

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 35, BGXS136, PISTOL, 40

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-7839, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-7840, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-7841, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-7842, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-7843, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SAVAGE, CUSTOM, G38990, RIFLE, .300

Acquisition Recorded, but not Timely/Correct, CZ (CESKA ZBROJOVKA), SHADOW 2, D216638, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00302, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00335, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, CENTURY ARMS, CANIK, TP9SF, 20AT19914, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, PALMETTO STATE ARMORY, PA-15, W1000602, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-8487, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-8488, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-8489, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-8490, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-8630, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-8631, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-8632, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-8633, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-8634, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, MAVERICK ARMS, 88, MV0482706, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, MEGA ARMS, AR-15, MAB5452, RIFLE, 5.56

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK3, 00251, RIFLE, 5.56

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, XDM ELITE, BY305419, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, NORINCO (NORTH CHINA INDUSTRIES), 1911, 409340, PISTOL, 45

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-9790, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, WINCHESTER, 70, 243, RIFLE, 30-06

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-9365, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-9366, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, BENELLI, S. PA., SUPER VINCI, CH004071P, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00376, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-10167, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-10168, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPCC MK1, PT9-00024, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SMITH & WESSON, M&P 40 M2.0 COMPACT, HSV5731, PISTOL, 40

Acquisition Recorded, but not Timely/Correct, BROWNING, CITORI 725, 175272V131, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY INC, HS PRODUKT, XDM-10, BY332578, PISTOL, 10

Acquisition Recorded, but not Timely/Correct, MOSSBERG, NEW HAVEN 600, H197565, SHOTGUN, 20

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK3, 00345, RIFLE, 5.56

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK3, 00346, RIFLE, 5.56

Acquisition Recorded, but not Timely/Correct, PW ARMS, 1895 NAGANT, 06005, REVOLVER, 7.62X38

Acquisition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., A5, 164184, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, SIG-SAUER, P320, 58H119712, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, RUGER, PRECISION RIFLE, 840-13452, RIFLE, .22

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, NONE, BFPL561, FRAME ONLY, MULTI

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, NONE, BHGL198, FRAME ONLY, MULTI

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 19, BNKH559, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, KIMBER, STAINLESS PRO CARRY II, KR127319, PISTOL, .45

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, MK4 MK4, PT15-00179, RIFLE, .223 WYLDE

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 500, T800708, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 22 (UNMARKED), ZMR691, FRAME ONLY, MULTI

Acquisition Recorded, but not Timely/Correct, PALMETTO STATE ARMORY, PA-15, SCB016227, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SMITH & WESSON, M&P 40 PRO SERIES, NED1761, PISTOL, 40

Acquisition Recorded, but not Timely/Correct, CENTURY ARMS, CANIK, TP-9SF ELITE, 20BH11165, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, XDM ELITE, BY254480, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 35, BGXS136, PISTOL, 40

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-11170, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, BROWNING ARMS COMPANY, MIROKU, A-BOLT, 70703MX651, RIFLE, .30-06

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, THE JACK, A21859, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V121107, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V121073, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, SMITH & WESSON, M&P BODYGUARD 380, NHD0117, PISTOL, 380

Acquisition Recorded, but not Timely/Correct, BRAVO COMPANY MFG INC., BCM4, A083193, RIFLE, .223 WYLDE

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 20102364, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, CZ (CESKA ZBROJOVKA), SCORPION EVO 3 S1, C925405, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, AERO PRECISION INC., M5, US151789, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, AERO PRECISION INC., M5, US151790, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00434, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4,

PT15-00442, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SDS IMPORTS, HUBEI JIANGHUA, LYNX 12, LH013693, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00401, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00476, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00487, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1241507, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, CANYON ARMS, LANDOR ARMS, LND117, LND02740, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, SCR081813, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, GFORCE ARMS, RADIKAL ARMS, GFP3, 20-31052, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3D, 2033111265, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, HATSAN USA, HATSAN ARMS CO, ESCORT DF12, 907881, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, COLT, CARBINE, CR040828, RIFLE, 5.56

Acquisition Recorded, but not Timely/Correct, JTS, CHONGQING JIANSHE INDUSTRY GROUP, M12AR, MR2000620G, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, CENTURY ARMS, CANIK, TP9SFX, 20BC65694, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, CENTURY ARMS, CANIK, TP9SFX, 20BC65696, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, CENTURY ARMS, CANIK, TP9SFX, 20BC65698, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00564, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00567, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00569, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, STEVENS, NONE, H1663, SHOTGUN, 20GA

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00576, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00577, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00578, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00579, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00580, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00581, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00582, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00583, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00584, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00585, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00586, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00587, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00588, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00589, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00590, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00591, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00592, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00593, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00594, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00595, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00596, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00597, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00598, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00599, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00600, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, EAA CORP. - EUROPEAN AMERICAN ARMORY, AKKAR, 612, 20066387, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, EAA CORP. - EUROPEAN AMERICAN ARMORY, AKKAR, 612, 20066481, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, COLT, CARBINE, CR043845, RIFLE, 5.56

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00626, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, BERETTA USA, TIKKA, T3X, Z06732, RIFLE, 308

Acquisition Recorded, but not Timely/Correct, ARMALITE, AR10A, 10-004579, RIFLE, 308

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, NSL135775, RIFLE, 300

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, CK212TP, 205011861, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-13249, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, LSI (LEGACY SPORTS INTERNATIONAL), FRANCOLIN ARMS, CITADEL PAX, 20-86060, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, COLT, GOLD CUP NATIONAL MATCH, 11933-NM, PISTOL, 45

Acquisition Recorded, but not Timely/Correct, BERGARA USA (BP FIREARMS LLC), DIKAR, B14, 61-06-210878-20, RIFLE, .308

Acquisition Recorded, but not Timely/Correct, BRAZTECH INTERNATIONAL LC (ROSSI), CBC (COMPANHIA BRAZILIERA DE CARTUCHOS), RS22L, 7CA210702P, RIFLE, .22

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116002, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116001, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116489, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116476, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116473, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116045, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116046, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116047, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116023, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116030, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116031, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116032, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116021, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116022, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116024, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031115997, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031115998, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116451, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031115450, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116449, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116452, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116485, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116488, SHOTGUN, 12

6

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116487, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116486, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116505, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116506, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116507, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116508, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116041, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116042, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116043, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116044, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116441, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116442, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116443, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116444, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116000, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116474, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116475, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116501, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116502, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116060, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116499, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116500, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116504, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116048, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116058, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116057, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116003, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116004, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116059, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116503, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031115999, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116029, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116498, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116497, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116492, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116491, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DICKINSON ARMS, KOMANDO, XX3B, 2031116490, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, LSI (LEGACY SPORTS INTERNATIONAL), HOWA, 1500, B603698, RIFLE, 6.5

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00680, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 500, L987138, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00776, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, COLT, KING COBRA, RA236623, REVOLVER, 357

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 17, BRMP374, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00537, RIFLE, .223 WYLDE

Acquisition Recorded, but not Timely/Correct, BLACK ACES TACTICAL, HAMLE AV TUFEKLERI, PRO SERIES 10, 20-PSX11581, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-14661, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-14662, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-14663, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-14664, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, SILENCERCO, LLC, OMEGA 36M, OMG36M-14665, FIREARM SILENCER, .36

Acquisition Recorded, but not Timely/Correct, FOUR PEAKS IMPORTS, TOROS ARMS (TOROS SILAH SANAYI), COPOLLA SA-1212, 21SA-0553, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1314401, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, CHIAPPA FIREARMS LTD, DAYTON, OH, MERAK, 601 DPS, 20SA12S-1131, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, DIAMONDBACK ARMS INC., DB-15, DB2470609, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 500, KB02437, SHOTGUN, 410

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 500, V1279606, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123651, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123652, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123653, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 2112365A, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123655, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123656, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123657, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123658, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123659, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123660, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123661, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123662, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123663, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123664, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123665, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123666, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123667, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123668, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123669, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123670, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123671, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123672, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123673, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123674, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123675, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123676, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123677, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123678, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123679, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123680, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123681, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123682, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123683, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123684, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123685, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123686, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123688, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123689, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123690, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123691, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123692, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123693, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123694, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123695, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123696, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123697, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123698, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123699, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, ANDERSON MANUFACTURING, AM-15, 21123700, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, MAVERICK ARMS, 88, MV0631575, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1322791, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, PW ARMS, PANZER ARMS, AR 12 PRO, MT-21-00647, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, PW ARMS, PANZER ARMS, AR 12 PRO, MT-21-00648, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, PW ARMS, PANZER ARMS, AR 12 PRO, MT-21-00649, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, PW ARMS, PANZER ARMS, AR 12 PRO, MT-21-00650, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, CAI (CENTURY ARMS), ROMARM/CUGIR, WASR-10, 21A1-88135, RIFLE, 762

Acquisition Recorded, but not Timely/Correct, DIAMONDBACK ARMS INC., DB-15, DB2163086, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, HELLCAT, BA283325, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 19, BTNP627, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 19, BTNP628, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 19, BTPZ529, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 19, BTPZ653, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 19, BTPZ656, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, CHRISTENSEN ARMS, 14, 7M13122, RIFLE, 6.5

Acquisition Recorded, but not Timely/Correct, COLT, GOVERNMENT MODEL, GV020750, PISTOL, 45

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, HELLCAT, BA298452, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, GLOBAL ORDNANCE, GRAND POWER S.R.O., STIRBOG SP9A1, GSA16622, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, BERGARA USA, DIKAR, B14, 61-06-008936-21,

RIFLE, 6.5

Acquisition Recorded, but not Timely/Correct, EAA CORP. - EUROPEAN AMERICAN ARMORY, GIRSAN, MC 312, 12-121YT-295, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, DESERT TECH LLC., MDR, MDR002374, RIFLE, .223 WYLDE

Acquisition Recorded, but not Timely/Correct, FREEDOM ORDNANCE MANUFACTURING, FX-9, 043775, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, CAI (CENTURY ARMS), ROMARM/CUGIR, WASR-10, 21A1-89457, RIFLE, 762

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, HELLCAT, BA214620, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, CHIAPPA FIREARMS, NOVA MODUL, RAK-9, RON2132899, RIFLE, 9

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, HELLCAT, BA320415, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, ROCK ISLAND ARMORY, ALFA-PROJ SPOL S.R.O., AL 31, ALFA132624, REVOLVER, .357

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1338633, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1345327, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, IMPACT PRECISION, 737R, R3617, RIFLE, .223

Acquisition Recorded, but not Timely/Correct, KARRI'S GUNS (PODUNK, INC.), KG15, S01709, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1352941, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, HELLCAT, BA61105, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, HELLCAT, BA214804, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 35, RZM602, PISTOL, 40

Acquisition Recorded, but not Timely/Correct, BERGARA, DIKAR, B14, 61-06-210807-20, RIFLE, .308

Acquisition Recorded, but not Timely/Correct, PWS (PRIMARY WEAPON SYSTEMS), MK1, W06129, RIFLE, 556

Acquisition Recorded, but not Timely/Correct, REMINGTON RAND INC., M1911A1 US ARMY, 1383454, PISTOL, .45

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11030, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11032, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11035, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11044, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11045, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11046, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11047, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11048, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11049, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11058, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPIKE'S TACTICAL LLC, ST15, DTOM11059, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, COLT, KING COBRA, RA255177, REVOLVER, 357

Acquisition Recorded, but not Timely/Correct, DDI, AMD65, 01373, RIFLE, 7.62

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1354740, OTHER, 12ga

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1361457, OTHER, 12ga

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1366960, OTHER, 12

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1367148, OTHER, 12ga

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 590, V1375450, OTHER, 12ga

Acquisition Recorded, but not Timely/Correct, MAUSER, UNKNOWN, 56632, PISTOL, .25

Acquisition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 11-87, PC452589, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, HELLCAT, BA313781, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, SONS OF LIBERTY GUN WORKS, LLC, EXO 2, 1776-112740, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, CHIAPPA FIREARMS, CIMARRON, PLINKERTON, CFIT21A01111, PISTOL, .22

Acquisition Recorded, but not Timely/Correct, ROCK ISLAND ARMORY, DERYA ARMS, VR80, R300259, SHOTGUN, 12GA

Acquisition Recorded, but not Timely/Correct, PALMETTO STATE ARMORY, PA-15, SCD759916, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, HELLCAT, BA264976, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, PALMETTO STATE ARMORY, PA-15, SCD688975, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PALMETTO STATE ARMORY, PA-15, SCD688976, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PALMETTO STATE ARMORY, PA-15, SCD688977, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, SHARPS BROS, HELLBREAKER, H09617, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, CAI (CENTURY ARMS), ROMARM/CUGIR, MINI DRACO, 21PF-7355, PISTOL, 762

Acquisition Recorded, but not Timely/Correct, SPRINGFIELD ARMORY, HS PRODUKT, XDS-45, BY577823, PISTOL, .45

Acquisition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 550-1, NSN, RIFLE, 22

Acquisition Recorded, but not Timely/Correct, MOSSBERG, 500, T800708, SHOTGUN, 12

Acquisition Recorded, but not Timely/Correct, HENRY REPEATING ARMS COMPANY, H010X, XFFS05120, RIFLE, 45-70

Acquisition Recorded, but not Timely/Correct, TAYLOR & COMPANY, CHIAPPA FIREARMS LTD, ALASKAN, CF-IT-20A01081, RIFLE, .357

Acquisition Recorded, but not Timely/Correct, BRAZTECH INTERNATIONAL (ROSSI), CBC (COMPANHIA BRAZILIERA DE CARTUCHOS), R92, 7CR045178P, RIFLE, .45

Acquisition Recorded, but not Timely/Correct, MAVERICK ARMS, 88, MV0654643, OTHER, 12GA

Acquisition Recorded, but not Timely/Correct, TR IMPORTS, SILVER EAGLE, MAGNUM, 18EK-1864, SHOTGUN, .410

Acquisition Recorded, but not Timely/Correct, AERO PRECISION INC., M4V7, M4-0305242, RECEIVER, MULTI

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00268, RIFLE, 5.56

Acquisition Recorded, but not Timely/Correct, SAVAGE ARMS COMPANY, KOFS, STEVENS 555, 21E11185, SHOTGUN, 410

Acquisition Recorded, but not Timely/Correct, ITALIAN FIREARMS GROUP (IFG-NA), TANFOGLIO, F.LLI, S.N.C, DEFIANT, IFG01071, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, HECKLER & KOCH INC., VP9 SK, 232-075965, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, GLOCK GMBH, 22, NMC914, PISTOL, 40

Acquisition Recorded, but not Timely/Correct, HERITAGE MFG. INC., ROUGH RIDER, 142932, REVOLVER, 22

Acquisition Recorded, but not Timely/Correct, HECKLER & KOCH INC., VP9, 224-329935, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, CENTURY ARMS, CANIK, METE SFX, 21BY03130, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, TRISTAR ARMS LLC, KRAL, RAPTOR, KRA111271, SHOTGUN, 20

Acquisition Recorded, but not Timely/Correct, EAA CORP. - EUROPEAN AMERICAN ARMORY, GIRSAN, MC 1911, T6368-21AP00101, PISTOL, .45

Acquisition Recorded, but not Timely/Correct, FREEDOM ORDNANCE MANUFACTURING, FX-9, 049469, PISTOL, 9

Acquisition Recorded, but not Timely/Correct, PRECISION TACTICAL, XPM4 MK4, PT15-00042, RIFLE, 5.56

Acquisition Recorded, but not Timely/Correct, REMINGTON ARMS COMPANY, INC., 700, RR92622K, RIFLE, 308

Acquisition Recorded, but not Timely/Correct, SDS IMPORTS LLC, TISAS - TRABZON GUN INDUSTRY CORP., ZIG M 1911, T0620-21Z11282, PISTOL, 45

Acquisition Recorded, but not Timely/Correct, WEATHERBY, HOWA, VANGUARD, VB257779, RIFLE, 6.5

Acquisition Recorded, but not Timely/Correct, FIME GROUP, MOLOT-ORUZHIR LTD, VPR12, 16VAP4300, SHORT-BARRELED SHOTGUN, 12GA

| 27 CFR 478.124(c)(4): Failure to record firearm information on an ATF F 4473 | | |
|---|---|---|
| ATF F 4473 Error/Omission, 1, Incomplete, 2791, HALL, CRAIG JR., 11/2/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incomplete, 3305, OSBURN, ANDREA, 1/20/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incomplete, 3393, DABNEY, JAMES, 3/9/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incomplete, 3610, MAYHUE, JOSHUA, 3/19/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incomplete, 3866, SANTANA-MORENO, YADIEL, 5/15/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 2924, NORTON, DANIEL, 11/27/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 2968, WILLIAMS, JOHN, 12/5/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3004, HUNTER, JEFFREY, 12/10/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3015, PERRY, JEFFREY, 12/11/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3012, RAMER, TIMOTHY, 12/11/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 2986, RODRIGUEZ, JULIO, 12/12/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3062, COLLINSWORTH, TYLER, 12/17/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3055, HARRELLMADISON, BRANDY, 12/21/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3115, BRADEN, RODNEY, 12/24/2020 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3160, GAY, TODD, 1/4/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3197, WIEDEMANN, ROBERT, 1/8/2021 | 2020 |

| | |
|---|---|
| ATF F 4473 Error/Omission, 1, Incorrect, 3195, STANDISH, SCOTT, 1/8/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3225, SHARPTON, STEVEN, 1/12/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3319, METZGER, TREVOR, 1/22/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3364, MOXNESS, DAYSON, 1/28/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3406, KILCREASE, HAROLD, 2/7/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3465, NICHOLS, WILLIAM, 2/19/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3493, CLARK, ROBERT, 2/27/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3495, SIMPSON, CHASE, 3/13/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3328, STEWART, TIMOTHY, 3/15/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3604, DURAN, GILBERT JR., 3/19/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3761, MOBLEY, PAUL JR., 4/20/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3903, ROBERTS, SAMUEL JR., 5/20/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3954, HOOD, REBEKAH, 5/31/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 3965, SANTIAGO, JOSE, 6/2/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 4035, GIVENS, HENRY, 6/22/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 4219, FITZPATRICK, JEROME, 8/4/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 4266, FOURTNER, AARON, 8/16/2021 | 2020 |
| ATF F 4473 Error/Omission, 1, Incorrect, 4370, SANDEL, JACOB, 9/13/2021 | 2020 |
| ATF F 4473 Error/Omission, 2, Incorrect, 2790, LAZO, PIO JR., 11/3/2020 | 2020 |
| ATF F 4473 Error/Omission, 2, Incorrect, 2862, STOTWELL, MELISSA, 11/13/2020 | 2020 |
| ATF F 4473 Error/Omission, 2, Incorrect, 3237, IRWIN, TERI, 1/12/2021 | 2020 |
| ATF F 4473 Error/Omission, 2, Incorrect, 3209, SKULSKI, CARA, 1/16/2021 | 2020 |
| ATF F 4473 Error/Omission, 2, Incorrect, 3459, HARSCH, MICHAEL, 2/18/2021 | 2020 |
| ATF F 4473 Error/Omission, 2, Incorrect, 3473, CARL, LUCAS, 2/23/2021 | 2020 |
| ATF F 4473 Error/Omission, 2, Incorrect, 3516, GERARD, LAURA, 3/4/2021 | 2020 |
| ATF F 4473 Error/Omission, 2, Incorrect, 3903, ROBERTS, SAMUEL JR., 5/20/2021 | 2020 |
| ATF F 4473 Error/Omission, 2, Incorrect, 3941, HOLLEY, BRIAN, 5/28/2021 | 2016 |
| ATF F 4473 Error/Omission, 2, Incorrect, 3954, HOOD, REBEKAH, 5/31/2021 | 2016 |
| ATF F 4473 Error/Omission, 2, Incorrect, 3972, MURDOCK, ANDREW, 6/4/2021 | 2016 |
| ATF F 4473 Error/Omission, 2, Incorrect, 4189, MANN, MICHAEL, 8/3/2021 | 2016 |
| ATF F 4473 Error/Omission, 24, Incomplete, 2551, MILLER, PAUL, 9/4/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incomplete, 2578, NICHOLS, LAURA, 9/9/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incomplete, 2575, SALDANA, MARILYN, 9/14/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incorrect, 2535, NOBLES, JASON, 9/2/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incorrect, 2538, QUEER, JEFFREY JR., 9/3/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incorrect, 2547, COOK, TODD, 9/4/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incorrect, 2612, HOLMAN, BRANTLEY, 9/18/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incorrect, 2748, PETRUS, PHILIP III, 10/20/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incorrect, 2750, SANTIAGO, JOSE, 10/22/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incorrect, 2751, COOK, TODD, 10/23/2020 | 2016 |
| ATF F 4473 Error/Omission, 24, Incorrect, 2774, BINDER, JOHN III, 10/29/2020 | 2020 |
| ATF F 4473 Error/Omission, 25, Incorrect, 2547, COOK, TODD, 9/4/2020 | 2020 |
| ATF F 4473 Error/Omission, 25, Incorrect, 2577, KLINE, DANIEL, 9/9/2020 | 2020 |
| ATF F 4473 Error/Omission, 25, Incorrect, 2687, HABEREK, JENNIFER, 10/7/2020 | 2020 |
| ATF F 4473 Error/Omission, 27, Incorrect, 2554, BARROETABENA, MARIO, 9/4/2020 | 2020 |
| ATF F 4473 Error/Omission, 28, Incorrect, 183 (NFA), FAULKNER, WILLIAM, 10/1/2020 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 2924, NORTON, DANIEL, 11/27/2020 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3012, RAMER, TIMOTHY, 12/11/2020 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3094, HUFF, HENRY, 12/22/2020 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3185, JOSEPH, SENN JR., 1/12/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3514, JOURNET, JOSEPH, 3/3/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3495, SIMPSON, CHASE, 3/13/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3328, STEWART, TIMOTHY, 3/15/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3809, PIPPIN, CHARLES III, 4/26/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3888, BROWNING, GAVEN, 5/17/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3945, WADE, JERAMIE, 5/29/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3949, DALTON, ZACHARY, 5/29/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3972, MURDOCK, ANDREW, 6/4/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 3987, BROWNE, FITZROY, 6/8/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 4060, SNOW, ANDREW, 6/29/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 4064, SLUDER, RILEY, 6/29/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 4066, STAFFORD, JAMES, 6/30/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 4088, HEAN, WILLIAM, 7/5/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 4213, BRADLEY, SAMUEL JR., 8/4/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 4225, SMITH, THEODORE, 8/5/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 4254, KLEM, ANDREW, 8/13/2021 | 2020 |
| ATF F 4473 Error/Omission, 4, Incorrect, 4264, SANDEL, JACOB, 8/16/2021 | 2020 |
| ATF F 4473 Error/Omission, 5, Incorrect, 2924, NORTON, DANIEL, 11/27/2020 | 2020 |
| ATF F 4473 Error/Omission, 5, Incorrect, 3004, HUNTER, JEFFREY, 12/10/2020 | 2020 |
| ATF F 4473 Error/Omission, 5, Incorrect, 3012, RAMER, TIMOTHY, 12/11/2020 | 2020 |
| ATF F 4473 Error/Omission, 5, Incorrect, 3115, BRADEN, RODNEY, 12/24/2020 | 2020 |
| ATF F 4473 Error/Omission, 5, Incorrect, 206 (NFA), EAVES, CODY, 1/6/2021 | 2020 |

7

| | | |
|---|---|---|
| | ATF F 4473 Error/Omission, 5, Incorrect, 209 (NFA), MAYATTE, SHANE, 1/7/2021 | 2020 |
| | ATF F 4473 Error/Omission, 5, Incorrect, 211 (NFA), PASION, KRISTIAN, 1/15/2021 | 2020 |
| | ATF F 4473 Error/Omission, 5, Incorrect, 213 (NFA), HEATON, WILLIAM III, 1/27/2021 | 2020 |
| | ATF F 4473 Error/Omission, 5, Incorrect, 214 (NFA), BROWN, KIRK, 2/3/2021 | 2020 |
| | ATF F 4473 Error/Omission, 5, Incorrect, 216 (NFA), GARIPAY, ROLAND, 2/15/2021 | 2020 |
| | ATF F 4473 Error/Omission, 5, Incorrect, 3495, SIMPSON, CHASE, 3/13/2021 | 2020 |
| | ATF F 4473 Error/Omission, 5, Incorrect, 3328, STEWART, TIMOTHY, 3/15/2021 | 2020 |
| | ATF F 4473 Error/Omission, 5, Incorrect, 223 (NFA), DYKES, BRIAN, 3/16/2021 | |
| | ATF F 4473 Error/Omission, 5, Incorrect, 225 (NFA), CARPENTER, CURTIS, 3/29/2021 | |
| | ATF F 4473 Error/Omission, 5, Incorrect, 234 (NFA), GILBERT, RICHARD JR., 4/13/2021 | |
| | ATF F 4473 Error/Omission, 5, Incorrect, 241 (NFA), LEURICK, JAMES III, 4/16/2021 | |
| | ATF F 4473 Error/Omission, 5, Incorrect, 246 (NFA), DODGE, KRIS, 4/30/2021 | |
| | ATF F 4473 Error/Omission, 5, Incorrect, 3949, DALTON, ZACHARY, 5/29/2021 | |
| | ATF F 4473 Error/Omission, 5, Incorrect, 255 (NFA), POTTS, RICHARD, 6/18/2021 | |
| | ATF F 4473 Error/Omission, 5, Incorrect, 259 (NFA), FANA, RAFAEL, 6/29/2021 | |
| | ATF F 4473 Error/Omission, 5, Incorrect, 4231, CHAMBERLIN, SETH, 8/6/2021 | |
| | ATF F 4473 Error/Omission, 5, Incorrect, 272 (NFA), WILLIAMS, MARK, 8/25/2021 | |
| 8 | 27 CFR 478.124(c)(1): Failure to obtain a completed ATF F 4473 | |
| | ATF F 4473 Error/Omission, 10, Incorrect, 3954, HOOD, REBEKAH, 5/31/2021 | 2020 |
| | ATF F 4473 Error/Omission, 22, Blank Item, 3822, PREPODNIK, WILLIAM, 4/29/2021 | 2020 |
| | ATF F 4473 Error/Omission, 30, Blank Item, 3305, OSBURN, ANDREA, 1/20/2021 | 2020 |
| 9 | 27 CFR 478.21(a): Failure to complete forms as prescribed | |
| | ATF F 4473 Error/Omission, 16, Incorrect, 2687, HABEREK, JENNIFER, 10/7/2020 | 2016 |
| | ATF F 4473 Error/Omission, 18a, Blank Item, 3283, HO, HUNG VAN, 1/18/2021 | 2020 |
| | ATF F 4473 Error/Omission, 21a, Blank Item, 3928, LEWIS, LOGAN, 5/26/2021 | 2020 |
| | ATF F 4473 Error/Omission, 23, Incorrect, 3305, OSBURN, ANDREA, 1/20/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incomplete, 3324, WAYMAN, MATTHEW, 1/22/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 2790, LAZO, PIO JR., 11/3/2020 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 2862, STOTWELL, MELISSA, 11/13/2020 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3004, HUNTER, JEFFREY, 12/10/2020 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3094, HUFF, HENRY, 12/22/2020 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3225, SHARPTON, STEVEN, 1/12/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3252, THOMPSON, JEFFREY, 1/14/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3209, SKULSKI, CARA, 1/16/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3294, SMITH, JAMES, 1/19/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3310, SMITH, BRANDON, 1/20/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3315, CORDON, AUSTIN, 1/21/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3314, DABNEY, JAMES, 1/21/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3378, LOFRIA, JOSEPH, 1/30/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3459, HARSCH, MICHAEL, 2/18/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3514, JOURNET, JOSEPH, 3/3/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3516, GERARD, LAURA, 3/4/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3578, SULLIVAN, LARS, 3/16/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3668, VAUGHN, GARRETT, 3/27/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3680, NICOLL, NICKOLAS, 3/30/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3761, MOBLEY, PAUL JR., 4/20/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3945, WADE, JERAMIE, 5/29/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 3987, BROWNE, FITZROY, 6/8/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 4060, SNOW, ANDREW, 6/29/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 4064, SLUDER, RILEY, 6/29/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 4066, STAFFORD, JAMES, 6/30/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 4213, BRADLEY, SAMUEL JR., 8/4/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 4225, SMITH, THEODORE, 8/5/2021 | 2020 |
| | ATF F 4473 Error/Omission, 24, Incorrect, 4234, KLEM, ANDREW, 8/13/2021 | |
| | ATF F 4473 Error/Omission, 31, Blank Item, 3305, OSBURN, ANDREA, 1/20/2021 | |
| | ATF F 4473 Error/Omission, 31, Incorrect, 3675, FALKOWSKI, ARTUR, 4/1/2021 | |
| 10 | 27 CFR 478.124(c)(3)(i): Failure to **verify** or record Identification document on ATF F 4473 | |
| | ATF F 4473 Error/Omission, 18a, Incomplete, 179 (NFA), BILBO, JACOBY, 9/19/2020 | 2016 |
| | ATF F 4473 Error/Omission, 18a, Incomplete, 2774, BINDER, JOHN III, 10/29/2020 | 2016 |
| | ATF F 4473 Error/Omission, 18a, Incorrect, 2577, KLINE, DANIEL, 9/9/2020 | 2016 |
| | ATF F 4473 Error/Omission, 18a, Incorrect, 2578, NICHOLS, LAURA, 9/9/2020 | 2016 |
| | ATF F 4473 Error/Omission, 26a, Incomplete, 2962, SCOTT, ADAM, 12/3/2020 | 2020 |
| | ATF F 4473 Error/Omission, 26a, Incorrect, 3012, RAMER, TIMOTHY, 12/11/2020 | 2020 |
| | ATF F 4473 Error/Omission, 26a, Incorrect, 3185, JOSEPH, SENN JR., 1/12/2021 | 2020 |
| | ATF F 4473 Error/Omission, 26a, Incorrect, 3291, WIDGEON, HANNAH, 1/18/2021 | 2020 |
| | ATF F 4473 Error/Omission, 26a, Incorrect, 3319, METZGER, TREVOR, 1/22/2021 | 2020 |
| | ATF F 4473 Error/Omission, 26a, Incorrect, 3364, MOXNESS, DAYSON, 1/28/2021 | 2020 |
| | ATF F 4473 Error/Omission, 26a, Incorrect, 3455, NICHOLS, WILLIAM, 2/17/2021 | 2020 |
| | ATF F 4473 Error/Omission, 26a, Incorrect, 3443, CAGUIOA, CHRISTOPHER, 2/19/2021 | 2020 |

| | | | |
|---|---|---|---|
| | | ATF F 4473 Error/Omission, 26a, Incorrect, 3500, LENZ, MATTHEW, 3/2/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26a, Incorrect, 3585, DIXON, DEMETRIUS, 3/22/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26a, Incorrect, 3807, GIPSON, DAVID, 4/24/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26a, Incorrect, 3822, PREPODNIK, WILLIAM, 4/29/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26a, Incorrect, 3954, HOOD, REBEKAH, 5/31/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26a, Incorrect, 4170, POPE, WYLY, 7/27/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26a, Incorrect, 4164, NOCHOLS, JAMES JR., 7/31/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26b, Blank Item, 3949, DALTON, ZACHARY, 5/29/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26b, Blank Item, 3979, MANUEL SANDINO, 6/4/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26b, Blank Item, 4168, TODD, EMIR, 8/3/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26b, Incorrect, 3235, CHASTAIN, JOEL, 1/16/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 26c, Blank Item, 3017, MILLS, JONATHAN, 12/11/2020 | 2020 |
| | | ATF F 4473 Error/Omission, 26c, Blank Item, 3185, JOSEPH, SENN JR., 1/12/2021 | |
| | | ATF F 4473 Error/Omission, 26c, Blank Item, 3465, NICHOLS, WILLIAM, 2/19/2021 | |
| | | ATF F 4473 Error/Omission, 26c, Incorrect, 3493, CLARK, ROBERT, 2/27/2021 | |
| 11 | 27 CFR 478.124(c)(3)(iv): Failure to record NICS contact information on an ATF F 4473 | ATF F 4473 Error/Omission, 19a, Incorrect, 2538, QUEER, JEFFREY JR., 9/3/2020 | 2016 |
| | | ATF F 4473 Error/Omission, 19a, Incorrect, 2896, BOXBERGER, JERRY, 11/20/2020 | 2016 |
| | | ATF F 4473 Error/Omission, 19c, Incorrect, 2551, MILLER, PAUL, 9/4/2020 | 2016 |
| | | ATF F 4473 Error/Omission, 19d, Incorrect, 2538, QUEER, JEFFREY JR., 9/3/2020 | 2016 |
| | | ATF F 4473 Error/Omission, 27a, Incorrect, 3393, DABNEY, JAMES, 3/9/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 27a, Incorrect, 3617, LINTON, JONATHAN, 3/22/2021 | 2020 |
| | | ATF F 4473 Error/Omission, 27a, Incorrect, 4225, SMITH, THEODORE, 8/5/2021 | 2020 |
| 12 | 27 CFR 478.102(c): Failure to initiate a new NICS check after 30-day lapse of initial check | NICS Violation, 3328, STEWART, TIMOTHY, 3/15/2021 | 2020 |

EXHIBIT D

**Subject:** Precision Tactical Arms Company, LLC; Extension Request
**Date:**  Wednesday, March 15, 2023 at 3:51:13 PM Eastern Daylight Time
**From:**  Michael Truman
**To:**    Gerber, Aaron R.

Good afternoon Director Gerber,

The Licensee received the Final Notice of Denial of Application, Revocation, Suspension and/or Fine of Firearms License ("Final Notice") in the referenced matter on March 10, 2023. The Licensee is disappointed with the outcome and also disappointed that ATF provided no response to its settlement offer, which included a good faith discussion of the record, the subject violations, its compliance program and offered serious terms including a 30 day fine and suspension. At this point, the Licensee intends to appeal ATF's decision to federal court.

The Licensee's immediate concern is the surprisingly brief wind-up period identified in the Final Notice, which was received late on a Friday (meaning that it lost two business days to act from the get-go). The Final Notice provides the Licensee with only fifteen (15) days to wind-up operations, which is ten days from today (March 25, 2023). Historically, it has been our experience that ATF has provided licensees with a minimum of thirty (30) days to wind-up operations, and often up to sixty (60) days, which we assume is because ATF is well-aware that licensees have sixty (60) days to appeal ATF's decision to federal court (and request a stay of revocation from ATF and/or the court).

The 15-day wind-up period has put the Licensee in an extremely difficult and legally prejudicial position. Such a brief period is not reasonable and does not give the Licensee sufficient time to evaluate its options, and either (1) prepare and file an appeal (obtaining/reviewing the hearing transcript, analyzing law/regulations, drafting pleadings and motions/briefs, engaging local counsel) or (2) wind-up operations (disposing of inventory, addressing NFA inventory, addressing pending NFA transfers). On that note, the Licensee currently has nearly 1000 GCA firearms in inventory. It also has 371 NFA items in inventory, of which 310 are currently pending transfer approval from ATF.

The Licensee is not aware of any public safety-related risk that would justify ATF's departure from its standard policy regarding the wind-up period. The record demonstrates that none of the Licensee's violations resulted in a transfer to a prohibited person or rendered a firearm untraceable.

Under these circumstances, the Licensee requests that the effective date of the revocation be extended until May 9, 2023 (the day the 60-day federal court appeal window closes) and asks that ATF advise the Licensee of its response as soon as possible, so that the Licensee may - as adequately as possible under the circumstances - protect its interests and ensure that it complies with applicable laws/regulations. If this request is granted (in full or for a shorter time period than the full 60 days requested), the Licensee will agree to not acquire new NFA inventory or submit new NFA transfer paperwork while this particular extension is in place so as to not create an even greater backlog of pending NFA forms.

Thank you,


--
**Michael A. Truman**
MUNITIONS LAW GROUP
Cheshire DeBrosse, P.C.

7240 Muirfield Drive, Suite 160
Dublin, OH 43017
T: 888.399.7863
F: 888.271.6215
I: https://munitionsgroup.com

hVps://muni,onsgroup.com

*Click HERE to pay invoice.*

EXHIBIT E

**Subject:** RE: Precision Tactical Arms Company, LLC; Extension Request
**Date:**   Monday, March 20, 2023 at 10:31:53 AM Eastern Daylight Time
**From:**   Gerber, Aaron R. (ATF)
**To:**    Michael Truman, Freyermuth, Amy L. (ATF), Easterling, Kimberly S. (ATF)
**CC:**    Husselbaugh, Eileen L. (ATF), Woodliff, Andrew A. (ATF)

Good Morning, Attorney Truman.

ATF will issue a conditional stay that expires May 9th, 2023, for your client to conclude its operations. Conditions will include no additional acquisitions of firearms not already ordered prior to the issuance of the Final Notice and a continuance in complying with the requirements of the GCA / NFA.

We will send you the official Stay soon.  Until then, this e-mail serves as temporary approval.

Thank you,

Aaron

Aaron Gerber
Director, Industry Operations
Tampa Field Division
813-202-7306

EXHIBIT F

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Final Notice of Denial of Application, Revocation
Suspension and/or Fine of Firearms License**

In the matter of:

☐ The application for license as a/an _____, filed by:

or

☑ License Number 1-59-091-07-5E-26145 _____ as a/an

Maufacturer in Firearms other than Destructive Devices _____, issued to:

Name and Address of Applicant or Licensee *(Show number, street, city, state and Zip Code)*

Precision Tactical Arms Company LLC
d/b/a Precision Tactical/ PTAC,
5155 South Ferdon Blvd., Unit A,
Crestview, Florida 32539

Notice is Hereby Given That:

☐ A request for hearing pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5) was not timely filed  Based on the findings set forth in the attached document, your

  ☐ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

    ☐ 15 calendar days after receipt of this notice, or   ☐ _____ .

  ☐ license is suspended for _____ calendar days, effective _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p)

  ☐ licensee is fined $ _____ , payment due: _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p)

☑ After due consideration following a hearing held pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5), and on the basis of findings set out in the attached copy of the findings and conclusions, the Director or his/her designee concludes that your

  ☐ application for license described above is denied, pursuant to 18 U.S.C., 923(d).

  ☐ application for renewal of license described above is denied pursuant to 18 U.S.C. 923(d), effective:

    ☐ 15 calendar days after receipt of this notice, or   ☐ _____ .

  ☑ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

    ☑ 15 calendar days after receipt of this notice, or   ☐ _____ .

  ☐ license is suspended for _____ calendar days, effective _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

  ☐ licensee is fined $ _____ , payment due: _____, pursuant to 18 U.S.C. § 922(t)(5) or 924(p)

If, after the hearing and receipt of these findings, you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant 18 U.S.C. § 923(f)(3), for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business  If you intend to continue operations after the effective date of this action while you pursue filing for judicial review or otherwise, you must request a stay of the action from the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives, at 400 NORTH TAMPA STREET, SUITE 2100, TAMPA, FL 33602

prior to the effective date of the action set forth above. You may not continue licensed operations unless and until a stay is granted by the DIO.

Records prescribed under 27 CFR Part 478 for the license described above shall either be delivered to ATF within 30 days of the date the business is required to be discontinued or shall be documented to reflect delivery to a successor. See 18 U.S.C. 923(g)(4) and 27 CFR § 478.127

After the effective date of a license denial of renewal, revocation, or suspension, you may not lawfully engage in the business of dealing in firearms. Any disposition of your firearms business inventory must comply with all applicable laws and regulations. Your local ATF office is able to assist you in understanding and implementing the options available to lawfully dispose of your firearms business inventory.

ATF Form 5300. 13
Revised September 2014

| Date | Name and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official | Signature |
|---|---|---|
| 03/07/2023 | Aaron Gerber, Director of Industry Operations | |

I certify that, on the date below, I served the above notice on the person identified below by:

☑ Certified mail to the address shown below.
Tracking Number: 70183090000205208227      **Or**      ☐ Delivering a copy of the notice to the address shown below.

| Date Notice Served | Title of Person Serving Notice | Signature of Person Serving Notice |
|---|---|---|
| 03/07/2023 | Director of Industry Operations | |

| Print Name and Title of Person Served | Signature of Person Served |
|---|---|
| Precision Tactical Arms Company LLC | |

Address Where Notice Served
5155 South Ferdon Blvd., Unit A, Crestview, Florida 32539

Note: Previous Edition is Obsolete

ATF Form 5300.13
Revised September 2014

# UNITED STATES DEPARTMENT OF JUSTICE
# BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES

| | | |
|---|---|---|
| In the Matter of Revocation of Federal | ) | |
| Firearms License Under Chapter 44, | ) | **TAMPA** |
| Title 18, United States Code, As A Manufacturer | ) | **FIELD DIVISION** |
| In Firearms | ) | |
| | ) | |
| Licensee: | ) | **FINDINGS AND** |
| | ) | **CONCLUSIONS** |
| Precision Tactical Arms Company, LLC | ) | |
| D/B/A Precision Tactical D/B/A PTAC | ) | |
| 5155 South Ferdon Blvd., Unit A | ) | |
| Crestview, FL 32539 | ) | |
| | ) | |

Precision Tactical Arm Company, LLC (Licensee), doing business as Precision Tactical and PTAC, 5155 South Ferdon Blvd., Unit A, Crestview, FL 32539, holds Federal firearms license #1-59-091-07-5E-26145 as a manufacturer of firearms other than destructive devices issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) pursuant to the Gun Control Act of 1968 (GCA), as amended, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478.

On August 4, 2022, ATF issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine, ATF Form 4500(5300.4), (Notice of Revocation) to the Licensee via certified mail. The Licensee timely requested a hearing to review that Notice. The virtual hearing was scheduled for and held on January 26, 2023.

The hearing was conducted by ATF Director of Industry Operations (DIO) Aaron Gerber, Tampa Field Division. ATF was represented by Firearms and Explosives Law Division (FELD) Counsel Kimberly Easterling, and ATF Industry Operations Investigator (IOI) Thomas McCarthy appeared as a witness on behalf of the Government. Ward Graham Lewis, Jr., owner of the Licensee, and Michael Truman and Derek DeBrosse, attorneys for Licensee, appeared at the hearing. The hearing was observed by FELD Counsel Eileen Husselbaugh, Division Counsel Amy Freyermuth and Attorney Andrew Woodliff, Tampa Field Division, and Area Supervisor, Carolyn King. The hearing was recorded and transcribed by the Government through a court reporter service. Both sides were offered the opportunity to present testimony and exhibits and to cross examine witnesses. The Government offered testimony and exhibits. The Licensee offered testimony and exhibits.

**Findings of Fact**

Having reviewed the record in this proceeding, I make the following findings:

1. An inspection of the Licensee's business premises was conducted by IO I Thomas McCarthy. The inspection was initiated on or about September 14, 2021. IOI McCarthy testified on behalf of the Government.

2. IOI McCarthy testified that he assisted IOI Margaret Specht during an inspection of Licensee in 2018. The inspection resulted in Licensee being cited for seventeen (17) violations on July 6, 2018. *See* Government Exhibits 5 and 6. The Government introduced a 2018 Acknowledgment of Federal Firearms Regulations signed by Licensee on July 6, 2018. *See* Government Exhibit 7.

3. The 2018 inspection resulted in Licensee attending a Warning Conference, a meeting with the ATF Area Supervisor and IOI(s) involved in the inspection to discuss the violations cited during the inspection, and procedures to be put in place by the FFL to prevent future violations.[1] A "follow-up" letter dated September 4, 2018, documents ATF's discussion with Licensee regarding the violations found during the 2018 inspection and corrective action required. *See* Government Exhibit 9.

4. IOI McCarthy testified that Licensee was again inspected and cited for violations on November 19, 2019. As a result of that inspection, ATF issued a Report of Violations citing Licensee with thirteen (13) regulatory violations several of which were repeated violations from the 2018 inspection. *See* Government Exhibits 10 and 11. The Government introduced a 2019 Acknowledgment of Federal Firearms Regulations signed by Licensee on October 31, 2019. *See* Government Exhibit 12.

5. The 2019 inspection also resulted in Licensee attending a Warning Conference. The violations found during the 2019 inspection were specifically discussed with Licensee, and Licensee was reminded that violations, repeat or otherwise, could result in license revocation. *See* Government Exhibit 14.

6. The inspection conducted by IOI McCarthy in September 2021 cited Licensee with multiple violations of the GCA. *See* Government Exhibit 70. The Government also introduced a 2021 Acknowledgment of Federal Firearms Regulations signed by Licensee on November 3, 2021. *See* Government Exhibit 69.

7. As set forth in paragraph 1 of the Notice of Revocation, Licensee willfully failed to initiate and complete a background check through the National Instant Background Check System (NICS) prior to the transfer of a firearm in violation of 18 U.S.C. § 922(t)(1) and 27 C.F.R. § 478.102(c). The Government introduced testimony and a Firearms Transaction Record, ATF Form 4473 (Form 4473) supporting the violation. *See* Government Exhibits 15 and 16.

---

[1] Transcript, pp. 18-19.

8. As set forth in paragraph 3 of the Notice of Revocation, on twenty-one (21) occasions Licensee willfully sold or delivered a firearm to a person without noting in the records required to be kept pursuant to 18 U.S.C. § 923 the place of residence of such person in violation of 18 U.S.C. § 922(b)(5) and 27 C.F.R. § 478.123. *See* Government Exhibits 17-23.

9. As set forth in paragraph 4 of the Notice of Revocation, Licensee willfully made a false entry in, failed to make appropriate entry in or failed to properly maintain the required acquisition and disposition record (A&D)  in twenty-one (21) instances in violation of 18 U.S.C. § 922(m), 18 U.S.C. § 924(a)(3)(A), 27 C.F.R. § 478.121(c) and 27 C.F.R. § 478.128(c). The Government introduced testimony and portions of Licensee's A&D record supporting the violations. *See* Government Exhibit 24.

10. As set forth in paragraph 5 of the Notice of Revocation, Licensee willfully failed in sixty-six (66) instances on ATF Forms 4473 to properly identify the firearm being transferred on the ATF Form 4473 in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(4). The Government introduced testimony and documents to support each of the violations cited. *See* Government Exhibits 15-23 and 25-68.

11. Licensee's testimony about its prior policy of not taking address information combined with its response to the Government's question about whether correct disposition entries were submitted to IOI McCarthy prior to the conclusion of the inspection, specifically that the Licensee couldn't remember if it was shown to IOI McCarthy or not, leads the DIO to believe the record was maintained as presented to ATF.

12. IOI McCarthy also testified that the violations cited in the 2021 inspection referenced in the Notice of Revocation were repeat violations; that is, Licensee was cited by ATF in 2018 and 2019, respectively for the same conduct cited in 2021. Specifically, the same violations were cited as violations on the Report of Violations issued on July 6, 2018, and November 19, 2019. *See* Government Exhibits 5, 6, 10 and 11.

13. Licensee acknowledged that it had been in business for eleven (11) years and had been made aware of the record keeping requirements as well as requirements for completing ATF Forms 4473.

14. Licensee acknowledged it committed a NICS violation when it transferred a firearm after the thirty (30) day lapse of the initial check of Timothy Stewart's background. Licensee acknowledged that it was a clear violation of the Gun Control Act.

15. Licensee acknowledged the violations and acknowledged that it used EZ ArmsKeeper software program that has been updated since it received a Notice of Revocation.

16. Licensee acknowledged that it placed the FFL's address in place of the customers' addresses in the A&D book but that the errors were corrected. However, Licensee was unable to provide an explanation as to why IOI McCarthy had not received a corrected copy of the corrected version of the A&D book.

17. Licensee acknowledged that it changed its policy regarding how it inputs information into the A&D book, specifically that it now logs any firearm into its A&D book regardless of how long the firearm is in the possession of the FFL and uses the correct customer address.

18. Licensee acknowledged that the ATF Form 4473 errors were "human error," but could not provide any further explanation into the discrepancies.

**Conclusions of Law**

Pursuant to the GCA, ATF may, after notice and opportunity for hearing, revoke a Federal firearms license if the holder has willfully violated any provision of the GCA or the regulations issued thereunder. 18 U.S.C. § 923(e); 27 C.F.R. § 478.73. For purposes of 18 U.S.C. § 923, "a showing of purposeful disregard of or plain indifference to the laws and regulations imposed on firearms dealers shows willfulness" for purposes of Federal firearms licensing. *Willingham Sports, Inc. v. BATF*, 415 F.3d 1274, 1277 (11th Cir. 2005). *Willingham* went on to hold a licensee's "repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference." *Willingham*, 415 F.3d at 1277 (citations omitted). *See also, Bryan v. United States*, 524 U.S. 184, 197-198 (1998). In several instances, the courts have held that ATF may revoke an FFL based on a single willful GCA violation. *Pinion Enters., Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1317 (N.D. Ala. 2005); Anzio Ironworks, Corp. v. Gerber, Case No. 8:20-cv-2132-KKM-AAS, MDFL (2022). It is not necessary that a licensee act with "bad purpose or evil motive." *See Willingham* at 1276.

The documents and testimony presented at the hearing support the contention that Licensee knew and understood the requirements of the law and regulations but failed to meet those obligations despite explicit warnings from ATF that continued violations could result in revocation of its license. In addition, there were many instances wherein the Licensee complied with these provisions in the past, demonstrating the Licensee understood its obligations under the Gun Control Act, and Licensee is an FFL who has been in business for many years. At the conclusion of the Government's presentation, Licensee acknowledged at the hearing it committed a "clear violation of the Gun Control Act" by transferring a firearm to a customer more than 30 days after the NICS check was conducted.[2] Given that Licensee had been cited for precisely the same violation in both the 2018 and 2019 inspections; had attended a warning conference after each such inspection at which that violation was discussed; and had assured ATF during each such conference that procedures were in place to ensure all employees adhered to the 30 day NICS time limitation, Licensee's continued failure to comply with the law and regulations may properly be considered purposeful disregard of or plain indifference to the GCA and its regulations. Although Licensee attempted to lay blame for the violation on a "glitch" in its EZ Armskeeper software program,[3] no software was necessary for Licensee to determine the transfer

---

[2] Transcript, p. 111, lines 13-21.
[3] Transcript, p. 113, lines 21-22.

was contrary to law. In fact, Licensee's employee certified, by signing in item 35 of the Form 4473, that the information on the form had been reviewed prior to transfer, and yet, despite the "clear violation of the Gun Control Act," Licensee's employee verified the disposition was not unlawful and transferred the firearm.

As indicated in the Notice of Revocation, ATF also previously cited Licensee for failure to properly identify on Forms 4473 firearms sold or transferred. The Report of Violations (ROV) for the compliance inspections in 2018 and 2019, more specifically violation 5 on the 2018 ROV, and violation 12 on the 2019 ROV, document ATF notifying Licensee of, and educating Licensee on, the failure to properly identify transferred firearms on Forms 4473.[4] During each of the prior inspections, ATF reviewed the specific Federal laws and regulations with the Licensee and the Licensee signed an acknowledgment certifying such information was explained to Licensee. The Acknowledgement also indicates any questions posed by Licensee were answered. Further, Licensee's failure to properly identify firearms on its Forms 4473 was discussed during each of Licensee's prior warning conferences, and Licensee was specifically advised that future violations could result in revocation of its firearms license.[5] Licensee acknowledged that 66 of its Forms 4473 contain "mistakes" related to a firearms' model, manufacturer, or type.[6] Licensee's only explanation was "human error, inadvertent human error."[7] Although Licensee asserts the errors were not intentional,[8] as previously noted, lack of a bad purpose or evil motive does not relieve a licensee of its obligations to comply with the law and regulations, and such violations demonstrate purposeful disregard or plain indifference when repeated after warning, as these 66 violations were.

As to the violations associated with Licensee entering its own address for that of customers in the A&D record, it is unclear whether Licensee is asserting the record was correct at the time of the 2021 inspection or was corrected after the 2021 inspection.

As indicated in the Notice of Revocation, ATF also previously cited Licensee for A&D violations. The ROV for the compliance inspections in 2018 and 2019, more specifically violation 14 on the 2018 ROV, for failing to include the address of the transferee; and, more specifically violations 5, 6 and 7 on the 2019 ROV, for failing to record firearm acquisition and disposition information to which IOI McCarthy reviewed with the FFL on how to properly identify firearms. Licensee stated that it previously did not collect addresses for gunsmithing customers and input them in the A&D book.[9] When Licensee was unable to reach the customers to enter the information in the A&D book that day, it put in the Licensee's address in order to complete the acquisition log.[10] Licensee also stated that it corrected the A&D discrepancies prior to the recall inspection, however, was unable to explain why IOI McCarthy was not provided a "corrected" record.[11] Counsel for the Government questioned Mr. Lewis about the incorrect disposition entries. Mr. Lewis stated that the FFL had the correct entries but did not know if or

---

[4] See Gov't Exhibits 6 and 10.
[5] See Gov't Exhibits 9 and 14.
[6] Transcript, pp. 120-121.
[7] Transcript, p. 121, l. 5.
[8] Transcript, p. 121, l. 6.
[9] Transcript, pp.116-118.
[10] Id.
[11] Transcript, pp. 118-120.

when they were provided to IOI McCarthy during the inspection. Mr. Lewis testified that training was put in place after the 2018 compliance inspection, but still was unable to provide a response as to why incorrect firearm information was uploaded into the electronic system. In both ROVs, Licensee was made aware of discrepancies in the A&D book. Both inspections resulted in a warning conference where the importance of accuracy in maintaining Licensee's A&D was discussed. Most significantly, the law and regulations do not allow a Licensee to enter false and incorrect information into an A&D record for later "correction." The A&D record calls for specific information accurately recorded at the time of entry, not at some later date, whether before or after inspection.

Licensee further acknowledged that it was cited in 2018 and 2019 with violating the GCA, and that each inspection resulted in a Warning Conference. The documents presented clearly show that after each inspection, the Federal firearms regulations were reviewed with Licensee, and it was advised what corrective actions to take to comply. The documents also clearly reflect ATF's multiple warnings to Licensee that any future violations, repeat or otherwise, could result in revocation of its firearms license.

A federal firearms licensee has a duty to be cognizant of the rules and regulations issued by ATF and to follow those mandates. It is apparent that Licensee, a veteran firearms business, knew of and understood its responsibilities, and was repeatedly advised of and periodically complied with those responsibilities, yet was plainly indifferent to the firearms laws and regulations. *See Willingham*, 415 F.3d at 1277.

I find that Licensee willfully violated 18 U.S.C. § 922(t)(1) and 27 CFR § 478.102(c) when it failed to initiate and complete a background check through the National Instant Background Check System prior to the transfer of a firearm.

I find that Licensee willfully violated 18 U.S.C. § 922(b)(5) and 27 C.F.R. § 478.123 when it transferred firearms without noting in its A&D records the place of residence of such person.

I find that Licensee willfully violated 18 U.S.C. § 922(m), 18 U.S.C. § 924(a)(3)(A), 27 CFR § 478.121(c) and 27 C.F.R. § 478.128(c) when it made a false entry in, failed to make appropriate entry in or failed to properly maintain the A&D records.

I find that Licensee willfully violated 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(4) when it failed to properly identify firearm identification information on the ATF Forms 4473.

As such, I conclude that the Licensee willfully violated the provisions of the Gun Control Act, as amended, and the regulations issued thereunder. Accordingly, as provided by 18 U.S.C. § 923(e) and 27 C.F.R. § 478.73, the Federal firearms license held by Precision Tactical Arms Company, LLC, doing business as Precision Tactical/PTAC license number 1-59-091-07-5E-26145, is hereby REVOKED.



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

*Washington DC*

www.atf.gov

## IMPORTANT NOTICE

### Selling Firearms AFTER Revocation, Expiration, or Surrender of an FFL

Former Federal Firearms licensees (FFLs) who continue to sell firearms after the revocation, expiration, or surrender of their license are subject to the same rules as persons who have never been licensed in determining whether they are "engaged in the business" of selling firearms without a license in violation of 18 U.S.C. § 922(a)(l)(A). Accordingly, former licensees who wish to dispose of any remaining business inventory must adhere to the following guidance:

Business inventory must be disposed of by the former FFL in a manner that, objectively, does not constitute being engaged in the business of dealing in firearms using the same facts and circumstances test that would apply to persons who have never been licensed.

The preferred manner of disposition is for the former licensee to:

- Arrange for another FFL to purchase the business inventory (and other assets) of the business; or
- Consign the inventory to another FFL to sell on consignment, or at auction.

Should a former FFL decide against those options, he/she should be aware that future sales - whether from his/her personal firearms collection or otherwise - will be evaluated for a potential violation of 18 U.S.C. § 922(a)(l)(A), just as would occur with a person who had never been licensed.

If a former FFL is disposing of business inventory, the fact that no purchases are made after the date of license revocation, expiration, or surrender does not immunize him/her from potential violations of 18 U.S.C. § 922(a)(l)(A). Instead, business inventory acquired through repetitive purchases while licensed are attributed to the former FFL when evaluating whether subsequent sales constitute engaging in the business of dealing in firearms without a license.

ATF remains committed to assisting former licensees in complying with Federal firearms laws. If you have questions, please contact your local ATF office.

CURTIS GILBERT    Digitally signed by
CURTIS GILBERT
Date: 2022.04.04
16:12:22 -04'00'

Curtis Gilbert
Deputy Assistant Director (Industry Operations)
Field Operations

EXHIBIT G

**Subject:** Re: Precision Tactical Arms Company, LLC; Extension Request

**Date:** Monday, March 20, 2023 at 11:17:13 AM Eastern Daylight Time

**From:** Michael Truman

**To:** Gerber, Aaron R. (ATF)

**CC:** Husselbaugh, Eileen L. (ATF), Woodliff, Andrew A. (ATF), Easterling, Kimberly S. (ATF), Freyermuth, Amy L. (ATF)

Good afternoon Director Gerber,

Thank you very much for granting the stay request and for your quick response.

In regards not acquiring new firearms, the Licensee will certainly comply with this condition. However, I just want to clarify the timing of the prohibition as it pertains to the original Final Notice and a potential updated Final Notice. As the original Final Notice allowed the Licensee to operate for 15 days with no conditions, the License did acquire/order firearms after March 10 (the day it received the Final Notice). Thus, the Licensee would need the prohibition on acquiring new inventory not already ordered to begin today rather than the original Final Notice date (issued 3/7, received by the License on 3/10). Can you please confirm this is ok?

Thank you again,

--
**Michael A. Truman**
MUNITIONS LAW GROUP
Cheshire DeBrosse, P.C.
7240 Muirfield Drive, Suite 160
Dublin, OH 43017
T: 888.399.7863
F: 888.271.6215
I: https://munitionsgroup.com

*Click HERE to pay invoice.*

EXHIBIT H

**Subject:** Re: Precision Tactical Arms Company, LLC; Extension Request
**Date:** Monday, March 20, 2023 at 4:05:34 PM Eastern Daylight Time
**From:** Michael Truman
**To:** Freyermuth, Amy L. (ATF)
**CC:** Husselbaugh, Eileen L. (ATF), Woodliff, Andrew A. (ATF), Easterling, Kimberly S. (ATF), Gerber, Aaron R. (ATF)

Ms. Freyermuth,

I have obtained the requested information from the Licensee.

Since March 10th, the Licensee acquired 11 firearms in its A&D Record. 8 of these were "transfer firearms" facilitating sales from Gun Broker or other private party transactions. 3 were firearms received from specific customer orders for a firearm (i.e. the Licensee orders a specific firearm at the customer's request). The Licensee has 2 firearms on order that were submitted after March 10th. These are also customer orders for specific firearms. The Licensee advised that these orders are usually received in just a couple of days and are expected to be received and transferred before the original revocation effective date of March 25th.

In accordance with Director Gerber's instructions, I have advised the Licensee to not acquire any additional firearms unless they were ordered prior to today. Also as indicated in my original request to Director Gerber, the Licensee will not submit any new NFA transfers to a non-licensee during this stay period.

If any further information is required or you would like to speak with my directly, please feel free to call my direct number which is 614-502-7653.

Regards,

--
**Michael A. Truman**
MUNITIONS LAW GROUP
Cheshire DeBrosse, P.C.
7240 Muirfield Drive, Suite 160
Dublin, OH 43017
T: 888.399.7863
F: 888.271.6215
I: https://munitionsgroup.com

*Click HERE to pay invoice.*

**From:** Michael Truman <michael@munitionsgroup.com>
**Date:** Monday, March 20, 2023 at 1:39 PM
**To:** Freyermuth, Amy L. (ATF) <Amy.Freyermuth@atf.gov>
**Cc:** Husselbaugh, Eileen L. (ATF) <Eileen.Husselbaugh@atf.gov>, Woodliff, Andrew A. (ATF) <Andrew.Woodliff@atf.gov>, Easterling, Kimberly S. (ATF) <Kimberly.Easterling@atf.gov>, Gerber, Aaron R. (ATF) <Aaron.Gerber@atf.gov>

**Subject:** Re: Precision Tactical Arms Company, LLC; Extension Request

Good afternoon Ms. Freyermuth,

I attempted to reach you but for some reason it did not go to your voicemail. Do you have a couple of minutes to briefly discuss via telephone? If so, please feel free to call my direct number which is 614-502-7653.

Best regards,

--
**Michael A. Truman**
MUNITIONS LAW GROUP
Cheshire DeBrosse, P.C.
7240 Muirfield Drive, Suite 160
Dublin, OH 43017
T: 888.399.7863
F: 888.271.6215
I: https://munitionsgroup.com

*Click HERE to pay invoice.*

---

**From:** Freyermuth, Amy L. (ATF) <Amy.Freyermuth@atf.gov>
**Date:** Monday, March 20, 2023 at 11:58 AM
**To:** Michael Truman <michael@munitionsgroup.com>, Gerber, Aaron R. (ATF) <Aaron.Gerber@atf.gov>
**Cc:** Husselbaugh, Eileen L. (ATF) <Eileen.Husselbaugh@atf.gov>, Woodliff, Andrew A. (ATF) <Andrew.Woodliff@atf.gov>, Easterling, Kimberly S. (ATF) <Kimberly.Easterling@atf.gov>
**Subject:** RE: Precision Tactical Arms Company, LLC; Extension Request

Mr. Truman,

From reading your email below, I just need some clarification. Can you explain the nature of the acquisitions/orders that the Licensee placed after he received the Final Notice on March 10th? How many firearms did the Licensee acquire/order?

Thanks.

Very Respectfully,
Amy Freyermuth
TFD Division Counsel
Office: (813) 202-7411
Cell: (215) 450-8378
Amy.freyermuth@atf.gov

**WARNING:** This electronic transmission is intended only for the person(s) named above. It may contain information that is sensitive and protected from disclosure by the attorney-client privilege and/or work product doctrine or exempt from disclosure under other applicable laws. Any use, distribution, copying, or other disclosure by any person not listed above may violate Federal law. If you are listed above, do not forward or re-transmit to a third-party without the permission of the sender or the ATF Chief Counsel's Office, unless instructed to do so within the body of this transmission. If you have received

this transmission in error, please notify the sender by return e-mail and destroy this message in its entirety (including all attachments).

**ATTORNEY WORK PRODUCT PRIVILEGED DOCUMENT**
**ATTORNEY-CLIENT PRIVILEGED COMMUNICATION**

\*\*\*\*\*\*\*

NOTICE: This e-mail message and any attached files are intended solely for the use of the addressee(s) named above in connection with official business. This communication may contain Sensitive But Unclassified information that may be statutorily or otherwise prohibited from being released without appropriate approval.  Any review, use, or dissemination of this e-mail message and any attached file(s) in any form outside of the Bureau of Alcohol, Tobacco, Firearms & Explosives or the Department of Justice without express authorization is strictly prohibited.

# EXHIBIT I

**Subject:** RE: Precision Tactical Arms Company, LLC; Extension Request
**Date:**    Tuesday, March 21, 2023 at 3:39:55 PM Eastern Daylight Time
**From:**    Gerber, Aaron R. (ATF)
**To:**      Michael Truman, Freyermuth, Amy L. (ATF)
**CC:**      Husselbaugh, Eileen L. (ATF), Woodliff, Andrew A. (ATF), Easterling, Kimberly S. (ATF)

Good Afternoon, Attorney Truman.

I'm going to retract the original stay concluding May 9th and change it to concluding April 9th, 2023, which is 30-days to conclude operations.  Same conditions will apply.

Thank you,

Aaron


Aaron Gerber
Director, Industry Operations
Tampa Field Division
813-202-7306

EXHIBIT J

### AFFIDAVIT OF LUKE COLDIRON

STATE OF _Idaho_      :

                   SS   :

COUNTY OF _Latah_      :

NOW COMES the Affiant and after being cautioned and duly sworn does state the following:

1. My name is Luke Coldiron, and the following statements are made upon my personal knowledge and belief.

2. I am over the age of 18 and of sound mind and memory in making this Affidavit.

3. I am the owner and software developer for EZ Arms Keeper.

4. EZ Arms Keeper is ATF compliance software which consists of an electronic A&D Record and e4473 platform.

5. As part of its e4473 platform, EZ Arms Keeper is designed to prevent transfers of firearms in which NICS was contacted more than 30 days before the transfer date.

6. In September 2022, I spoke with Andrew McEntire of Precision Tactical Arms Company, and he said that EZ Arms Keeper allowed a transfer where NICS was contacted more than 30 days before the transfer.

7. I subsequently reviewed the software and discovered it was not functioning as intended and **did** allow transfers even if NICS was contacted more than 30 days before the transfer date.

8. On September 24, 2022, I issued a patch to Andrew McEntire to fix the issue and ensure that EZ Arms Keeper would not allow a firearm to be transferred more than 30 days after NICS was contacted.

_Further I sayeth Naught._

Luke Coldiron

Sworn and subscribed in my presence this January, 21, 2023

Notary Public

KARA SCHMIDT
Notary Public
State of Idaho
Commission No. 20214912