IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| PRECISION TACTICAL ARMS COMPANY, LLC,<br><br>　Petitioner,<br><br>v.<br><br>AARON GERBER,<br>In his Official Capacity as Director of Industry Operations for the Tampa Field Division of the Bureau of Alcohol, Tobacco, Firearms & Explosives<br><br>　Respondent. | Civil Case Number:<br>3:23-CV-07752-TKW-HTC |

### AARON GERBER'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUCTION

Defendant Aaron R. Gerber in his official capacity as Director of Industry Operations for the Tampa Field Division of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("Respondent") responds in opposition to Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction with Supporting Memorandum ("Petitioner's Motion") by Petitioner Precision Tactical Arms Company, LLC ("Petitioner"). The Court denied Petitioner's request for a Temporary Restraining Order "TRO" on April 7, 2023. [ECF.5].

1

# MEMORANDUM OF LAW

## I.    Introduction

Petitioner is a limited liability company that previously maintained a Federal Firearms License ("FFL") issued by the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). [ECF.2, p.2]. Petitioner operated as a dealer of firearms pursuant to the FFL. [ECF.2, p.2].

Respondent is the Director of Industry Operations for the Tampa Field Division of ATF, which is the ATF Field Division that regulates the Petitioner's business. [ECF.1, p.2]. ATF revoked Petitioner's FFL based on Petitioner's willful violations of the Gun Control Act ("GCA") following due notice to Petitioner and a hearing. [ECF.1, pp.7-8; ECF.9-2].

Petitioner has filed a Petition for Judicial Review of Respondent's revocation of Petitioner's FFL pursuant to 18 U.S.C. § 923(f)(3) [ECF.1] and seeks a temporary injunction staying the revocation of its FFL during the pendency of these proceedings. [ECF.2].

For the reasons stated herein, Petitioner's Motion is due to be denied.

## II.    Statement of Facts

On September 14, 2021, ATF Industry Operations Investigator (IOI) Thomas McCarthy conducted a recall inspection of Petitioner's premises. [ECF.9-1, pp.165-75]. The inspection resulted in Petitioner being cited violations of the GCA and its

implementing regulations in 27 C.F.R. § 478, *et seq*. [ECF.9-1, pp.297-31]. The violations included: (1) failing to conduct a background check prior to transferring a firearm to a nonlicensee; (2) failing to note in Petitioner's A&D Record the address of the transferee of firearms; (3) making false entries in the A&D Record by listing the Petitioner's address as the address of the transferee; and (4) failing to identify on Firearms Transaction Records, ATF Forms 4473, firearms being transferred properly. [ECF.9-1, pp.297-31]. As discussed in more detail below, Petitioner had been cited for these same violations in two prior inspections.

Based on the 2021 inspection, on August 4, 2022, ATF issued a Notice to Revoke or Suspend License and/or Impose a Civil Fine (Notice), ATF Form 4500 (5300.4), to Petitioner. [ECF.9-1, pp.165-75]. On August 9, 2022, Petitioner, in response to the Notice, requested a hearing. [ECF.9-1, pp.176-79]. A hearing was held on January 26, 2023. [ECF.2, p.2; ECF.9-1, p.5].

Industry Operations Investigator (IOI) Thomas McCarthy testified on behalf of the Government at the hearing. IOI McCarthy testified that Petitioner had previously committed violations of the same regulations discovered in the 2021 inspection in previous inspections ATF conducted in 2018 and 2019. [ECF.9-1, pp.19-26, pp.180-197, pp.198-215, pp.228-256, pp.257-285, pp.297-315].

The 2018 inspection resulted in Petitioner being cited in a Report of Violations ("ROV") for 4,000 discrete violations of 17 different regulations of the GCA.

3

[ECF.1, p.5; ECF.9-1, pp.19-26, pp.180-197, pp.198-215, pp.216-218, pp.219-221, 222-227]. These violations included failures to maintain ATF Forms 4473 and the Firearms Acquisition and Disposition ("A&D") Records properly and failures to run National Instant Criminal Background Check System ("NICS") checks properly prior to transferring firearms to unlicensed individuals. [ECF.9-1, pp.18-26, pp.198-215].

As a result of the 2018 inspection, ATF held a Warning Conference ("WC") with Petitioner on August 28, 2018, during which the parties discussed the violations cited during the inspection, proper compliance measures, and procedures to be put in place by Petitioner to prevent future violations. [ECF.9-1, pp.23, pp.198-215, pp.219-221]. A WC follow-up letter was issued to Petitioner on September 4, 2018, listing the violations discussed at the WC, the necessary corrective action to prevent violations from reoccurring, and specifically advising Petitioner that future violations, repeat or otherwise, could be viewed as willful and may result in revocation of the license. [ECF.9-1, pp.23-24, pp. 222-27].

ATF's 2019 inspection of Petitioner's business resulted in issuance of another ROV for violating 13 regulations involving 327 violations of the Gun Control Act, several of which were violations of the same regulations found in the 2018 inspection, such as violations associated with proper maintenance of ATF Forms 4473 and A&D Record. [ECF.1, pp.5-6; ECF.9-1, pp.26-32, pp.228-256, pp.257-

4

285].

Petitioner attended a second WC on January 29, 2020, during which the parties discussed the violations found during the 2019 inspection, proper compliance measures, and the necessary corrective action to prevent the violations from reoccurring. [ECF.9-1, pp. 29-31, pp.286-287]. Petitioner was again reminded in a WC follow-up letter dated February 4, 2020, that violations, repeat or otherwise, could be viewed as willful and may result in license revocation. [ECF.9-1, pp. 40-31, pp.288-290].

IOI McCarthy testified that ATF had previously cited Petitioner in 2018 and 2019 for failure to maintain the A&D Record and Forms 4473. [ECF.9-1, pp. 31-32, pp.44-45, p.48, p.66, pp.76-79, pp.86-87, pp.94-95, pp.165-75, pp.180-197, pp.198-215, pp.228-56, pp.257-284, pp.286-87, pp.288-290, pp.291-294]. ATF had also previously cited Petitioner in 2018 for violations associated with failure to conduct background checks properly. [ECF.9-1, pp. 31-32, pp.44-45, p.48, p.66, pp.76-79, pp.86-87, pp.94-95, pp.165-75, pp.180-197, pp.198-215, pp.228-56, pp.257-284, pp.286-87, pp.288-290, pp.291-294]. The 2021 inspection showed that Petitioner once again committed violations for failure to maintain the A&D Record, failure to maintain accurate Forms 4473, and failure to comply with regulations concerning background checks. [ECF.9-1, pp.31-32, pp.44-45, p.48, p.66, pp.76-79, pp.86-87, pp.94-95, pp.165-75, pp.180-197, pp.198-215, pp.228-56, pp.257-284, pp.286-87,

pp.288-290, pp.297-315].

Ward Graham Lewis, owner of Petitioner, testified on behalf of Petitioner. Petitioner acknowledged at the hearing that it had been in business for 11 years and had been informed of the record keeping requirements, as well as the importance of filling out the ATF Forms 4473.  [ECF.9-1, p.123, p.138].

Petitioner acknowledged it understood its responsibilities as an FFL regarding record-keeping and did not dispute the violations that had been found by ATF during the 2021 inspection.   [ECF.9-1, p.111, pp.115-118, p.121, p.123, p.131, p.138, p.140, pp.142-143].  Petitioner had been in business for approximately 11 years, and had been informed of the record keeping requirements, as well as requirements for completing ATF Forms 4473.   [ECF.9-1, p.98, p.123, p.138]. Petitioner acknowledged it committed a clear violation of the Gun Control Act when it transferred a firearm more than 30 days after conducting a background check on the firearm transferee.  [ECF.9-1, p.111]. Petitioner also acknowledged that on a few occasions, it placed its address in its A&D record for that of a customer, because Petitioner had no internal policy for collecting a person's address when taking firearms in for gunsmithing. [ECF.9-1, pp.116-118].  Petitioner did not dispute that it had once again failed to maintain ATF Forms 4473 properly on sixty-six (66) occasions. [ECF.9-1, p.121-23].

Petitioner blamed employees and software issues for these repeat violations.

[ECF.9-1, p.103, p.105, pp.112-115, pp.121-123, p.140]. Despite arguing that the failure to conduct a background check on the transfer of a firearm to an unlicensed individual was due to a software issue that was subsequently fixed, Petitioner admitted that it was his responsibility to ensure that a background check was done and that he could not rely solely on software to ensure compliance with the GCA. [ECF.9-1, p.115].

Petitioner admitted that he could understand ATF's concerns that he has had two prior warning conferences for repeat violations, but stated now, after this revocation hearing over the third round of the same violations, he will supposedly maintain compliance with all relevant laws and regulations because it is important to him. [ECF.9-1, p.131]. Petitioner admitted that in his opinion, the acceptable number of violations for an FFL is zero yet argued that the 2021 recall inspection with numerous repeat violations spanning 18 pages is a very good inspection. [ECF.9-1, pp.121-22, p.143, pp.297-315].

After the hearing, on March 7, 2023, ATF issued a Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License (Final Notice), ATF Form 5300.13 to the Petitioner. [ECF.9-2]. ATF ultimately authorized a 30-day stay of the effective date of revocation, making the effective revocation date April 9, 2023. [ECF.1, p.9, ¶56].

### III.     Standards of Review

A. Standard of Review for Motion for Preliminary Injunction.

A party seeking "a preliminary injunction must establish that, (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Vital Pharms., Inc., v. Alfieri,* 23 F.4th 1282, 1290-92 (11th Cir. 2022). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *ACLU of Fla., Inc. v. Miami-Dade County Sch. Bd.,* 557 F.3d 1177, 1198 (11th Cir. 2009). As this Court has noted, the first factor- likelihood of success on the merits- is "generally the most important." *Schiavo ex rel. Schindler v. Schiavo,* 403 F. 3d 1223, 1232 (11th Cir. 2005); [ECF.5, p. 3].

"[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishe[s] the 'burden of persuasion' for each prong of the analysis." *Am's Heath Ins. Plans v. Hudgens*, 742 F.3d 1319, 1329 (11th Cir. 2014). The entry of the preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Siegel v. LePore*,

234 F.3d 1163, 1179 (11th Cir. 2000).

    B. Standard of Review for *de novo* review of revocation of FFL.

The Court's review of ATF's revocation of Petitioner's FFL is limited to whether ATF's denial or revocation was "authorized." 18 U.S.C. 923(f)(3); *See Morgan v. U.S. Dep't of Just., Bureau of Alcohol, Tobacco, Firearms & Explosives*, 473 F. Supp. 2d 756, 762 (E.D. Mich.) ("the narrow question whether the Attorney General's decision was authorized, does not call upon this Court to decide whether it would revoke the license in its own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license"); *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356 (5th Cir. 2017); *Armament Services Int. v Yates*, 2017 U.S. Dist. LEXIS 194554 (E.D. Pa 2017); *Arwady Hand Trucks Sales, Inc. v. Vander Werf,* 507 F. Supp. 2d 754 (S.D. Tex. 2007); *Pinion Enters., Inc.,* 371 F. Supp. 2d at 1317 (N.D. Ala. 2005) (holding that statute only allows the district court to reverse the Attorney General's decision if it finds the Attorney General was not authorized to revoke the license, and that the language of § 923(f)(3) does not call upon the court to decide whether it would revoke the license in its own judgment, but whether, all of the evidence presented is sufficient to justify the Attorney General's revocation of the license).

**IV.**    **Petitioner is Unlikely to Succeed on the Merits**

    Generally, the most important factor to consider when deciding whether to

9

issue a preliminary injunction is whether movant can show a "substantial likelihood of success on the merits. *Schiavo ex rel. Schindler*, 403 F.3d at 1232. "If there is no substantial likelihood of success on the merits, no injunction may be issued." *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1254-55 (11th Cir. 2020).

Here, Petitioner cannot meet this burden as the record before this Court demonstrates that Petitioner willfully violated the GCA and its implementing regulations. Thus, ATF was authorized under the GCA and governing case law to revoke Petitioner's license.

### a. ATF's Authority to Revoke Firearms Licenses

Title 18 U.S.C. § 923(f) provides that the Attorney General may, after notice and opportunity for a hearing, revoke a license issued under the Gun Control Act of 1968. A license may be revoked if, among other things, the licensee has committed any willful violations of the GCA. *See* 18 U.S.C. § 923(e); 27 C.F.R. § 478.73. A showing of purposeful disregard of or plain indifference to the laws and regulations governing firearms dealers show willfulness for purposes of 18 U.S.C. § 923(d)(1)(C). *See Willingham Sports, Inc. v. BATF*, 415 F.3d 1274, 1277 (11th Cir. 2005). Furthermore, a licensee's repeated violations after it has been informed of the regulations and warned of violations establishes purposeful disregard or plain indifference. *See Id.; see also Appalachian Res. Dev. Corp. v. McCabe*, 384 F.3d 461, 464 (6th Cir. 2004); *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 468 (7th Cir. 1980);

*Cucchiara v. Sec'y of Treasury*, 652 F.2d 28, 20 (9th Cir. 1981); *Prino v. Simon*, 606 F.2d 449, 451 (4th Cir. 1979); *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979). Bad purpose or evil motive is not required to establish willfulness. *Willingham Sports Inc.,* 415 F.3d at 1276.

"A single willful violation [of the GCA] authorizes the ATF to revoke the violator's FFL, regardless of how severe…" *Simpson v. United States*, 913 F.3d 110, 114 (3d Cir. 2019) *quoting Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 358 (5th Cir. 2017)*; see also Am. Arms Int'l v. Herbert*, 563 F.3d 644, 649 (6th Cir. 2008); *DiMartino v. Buckles,* 129 F. Supp. 2d 524, 827 (D. Md. 2001); *aff'd sub nom. DiMartino v. Buckley*, 19 F. App'x 114 (4th Cir. 2001); *Fairmont Cash Mgmt., L.L.C.,* 858 F.3d 356; *Trader Vic's Ltd. v. O'Neill*, 169 F. Supp. 2d 957 (N.D. Ind. 2001); *Breit & Johnson Sporting Goods, Inc. v. Ashcroft*, 320 F. Supp. 2d 671 (N.D. Ill. 2004).

  b. **ATF's Revocation was Authorized because Petitioner Willfully Violated the GCA and its Implementing Regulations.**

Here, the hearing record establishes that Petitioner committed repeat violations after it had been informed of the regulations and warned of violations. Petitioner was cited in 2018 for more than 4,000 violations associated with failure to conduct background checks properly, maintain its A&D Record, and complete ATF Forms 4473. In 2019, the Petitioner was cited again for hundreds of violations associated with its A&D Record and ATF Forms 4473. Finally, in 2021, Petitioner

11

was again cited for failure to conduct background checks properly, maintain its A&D Record, and complete ATF Forms 4473.

ATF has tried multiple times, during two distinct compliance inspections and two prior Warning Conferences, to educate Petitioner on how to achieve compliance so that his FFL would not be subject to revocation. Despite two Warning Conferences within the past several years in which Petitioner assured ATF that it would take corrective action to prevent future violations, Petitioner repeated these violations for a third time in 2021.

Courts have held that there is no *de minimis* exception to the GCA. *Article II Gun Shop v. Gonzales*, 441 F.3d 492, 497-98 (7th Cir. 2006). In *Article II*, the Seventh Circuit affirmed the revocation of the FFL based on 12 failures to properly fill out ATF Forms 4473. *Id.* Moreover, Courts have routinely upheld revocations involving a similar or fewer number of repeat violations than the number of undisputed repeat violations in this case. *Shaffer v. Holder*, No. 1:09-0030, 2010 WL 1408829 (M.D. Tenn. Mar. 30, 2010)(upholding revocation where the undisputed repeat violations after prior ATF warnings included 68 GCA violations such as failure to fill out ATF Forms 4473 accurately and failure to properly maintain the A&D Record); *Friedman's, Inc. v. McCabe*, No. 3:10-00497, 2010 WL 11693212, (M.D. Tenn. Nov. 10, 2010) (affirming the revocation after prior warnings by ATF for failure to accurately record information on ATF Forms 4473

and in the licensee's A&D Record).

The District Court in *Willingham* noted the importance of strict compliance with the GCA, stating "[i]f ever there were a statutory scheme where a licensee should be obligated to 'sweat the details,' irrespective of how trifling they may appear, the Gun Control Act would appear to fit that bill." *Willingham Sports Inc. v. Bureau of ATF*, 348 F. Supp. 2d 1299, 1309 n. 14 (S.D. Ala. 2004). Periodic compliance by a veteran FFL with regulatory requirements – such as properly completing ATF forms, properly maintaining A&D Record, and conducting NICS background checks prior to the transfer of firearms – can support a finding of willfulness. *See CEW Props v. United States DOJ*, 979 F.3d 1271, 1281 (10th Cir. 2020).

At least one other circuit has rejected the argument that "relatively few violations" and subsequent remedial measures "somehow undercut the ATF's authority to revoke" a license, noting that a single violation is sufficient to revoke and emphasizing that "…these repetitions…undermine the petitioner's claim to have corrected his ways." *Proccacio v. Lambert*, 233 Fed. Appx. 554, 559 (7th Cir. 2007) (citing *Cisewski v. Department of Treasury, Bureau of Alcohol, Tobacco, and Firearms*, 773 F. Supp. 148, 152 (E.D. Wis. 1991)).

Accordingly, any arguments by Petitioner that its repeated violations were inadvertent human mistakes are misplaced.

13

The "length of time an individual has been licensed" is "relevant to willfulness." *CEW Props. Inc.,* F.3d at 1281; *accord Pinion Enters., Inc.*, 371 F. Supp. 2d at 1317 (N.D. Ala. 2005) (reasoning that a petitioner's "long history as a license holder" suggests knowledge of legal requirements); *see also Nationwide Jewelry & Pawn v. ATF*, 455 F. Supp. 2d 1379, 1385 (M.D. Ga. 2006) (considering a licensee's long tenure as evidence of willfulness).

The hearing record demonstrates that Petitioner, an experienced FFL since 2013, knew and understood its requirements under the GCA. Petitioner acknowledged at the hearing that it had been in business for 11 years and had been informed of the record keeping requirements, as well as the importance of filling out the ATF Form 4473. However, despite his knowledge of the requirements of the GCA, the Petitioner was still cited for repeat violations from two past inspections that form the basis of the Petitioner's revocation.

Petitioner's arguments blaming his employees and software malfunctions for the violations are unavailing. A licensee is responsible for record keeping violations made by his/her employees. *Stein's, Inc. v. Blumenthal,* 649 F.2d 463, 468 (7th Cir. 1980); *Fin & Feather Sport Shop, Inc. v. U.S. Treasury Dep't,* 481 F. Supp. 800, 806 (D. Neb. 1979); *McLemore v. U.S. Treasury Dep't,* 317 F. Supp. 1077, 1079 (N.D. Fla. 1970).

Any argument that a computer software error allowed Petitioner to commit

violations of the GCA is not supported in the record or consistent with the GCA and case law which mandate that the FFL is responsible to ensure that required information is properly recorded in each firearms transaction. *See Sovereign Guns Inc. v, United States DOJ*, 2018 U.S. Dist. LEXIS 162827 at * 14 (E.D.N.C. 2018) (upholding ATF revocation of FFL noting need for strict compliance with GCA and denying FFL's attempt to mitigate record keeping errors based on alleged record keeping software problems).  It is always the responsibility of any Licensee, despite using technology, to assist in filling out ATF Forms 4473 or keep an A&D Record or hire employees to conduct the day-to-day operations of the FFL, to ensure that their FFL always remains in compliance with the GCA and its implementing regulations. *See id*.  Despite arguing that the failure to conduct a background check on the transfer of a firearm to an unlicensed individual was due to a software issue that was subsequently fixed, Petitioner admitted that it was his responsibility to ensure that a background check was done and that he could not rely solely on software to ensure compliance with the GCA.

Petitioner conceded that it still must improve its compliance with the GCA due to the repeat violations cited in the 2021 inspection but argues that any finding of willfulness in the 2021 inspection is negated by the decrease in the volume of violations from 2019 because "…improvement shows a willful commitment to comply with legal obligations." [ECF.2, p. 7; ECF.9-1, pp.131-136].

However, when an FFL engages in repeat violations with undisputed knowledge of the statute's requirements, improvement does not mitigate the willful nature of the cited violations. *See Al's Loan Office Inc. v. United States Dep't. of Treasury, ATF,* 738 F. Supp. 221, 224-225 (E.D. Mich. 1990) (improvement in last inspection and other remedial measures do not mitigate willful repeat GCA violations*); Athens Pawn Shop, Inc. v. Bennett*, No. 6:07-CV-114, 2008 WL 4951768, at *1 (E.D. Tex. Nov. 14, 2008), *aff'd*, 364 F. App'x 58 (5th Cir. 2010) (rejecting concept that since FFL has improved operation over time revocation of FFL was not authorized).

In this case, Petitioner was repeatedly warned about the violations that form the basis of the revocation before the Court and educated on how to bring the FFL into compliance, and yet still committed violations of the same regulations in the 2021 inspection that it violated in the 2018 and 2019 inspections. The record clearly demonstrates that ATF was authorized to revoke Petitioner's FFL based on its willful violations of the GCA. Thus, Petitioner does not have a substantial likelihood of success on the merits.

## V.     **The Harm to the Public Outweighs Any Incidental Harm to Petitioner**

Assuming *arguendo* that Petitioner could meet the first two elements for a preliminary injunction, its motion would still fail as it cannot demonstrate the remaining elements: (3) that the threatened injury outweighs possible harm that the

injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest. *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1322 (11th Cir. 2015).

ATF and other law enforcement agencies rely on accurate FFL transaction records to trace firearms involved in crimes and apprehend criminals. *See Abramski v. United States*, 573 U.S. 169, 182-83 (2014); (information contained in gun dealer's records establishes information about a gun buyer's identity and that helps fight serious crime); *see also National Shooting Sports Foundation v. Jones*, 716 F.3d 200, 204-05 (D.C. Cir. 2013) (ATF relies on accurate FFL records to link suspects in criminal investigations and identify potential firearms traffickers); *accord J & G Sales, Ltd. v. Truscott*, 473 F. 3d 1043, 1045 (9th Cir. 2007) (ATF relies on accurate records to trace firearms for law enforcement). During his tenure as an FFL, Petitioner has admittedly failed to record thousands of firearms transactions accurately, both regarding the A&D Record and ATF Forms 4473. Violations like the repeat ones the Petitioner was found to have willfully committed could directly impede ATF's law enforcement functions, including its ability to trace crime guns effectively. This, in turn, makes it harder for ATF to carry out its mission of reducing violent crime and protecting the public.

Petitioner was cited for failure to conduct a NICS background check properly prior to the transfer of a firearm to an unlicensed individual, a violation that the

Petitioner admits happened. Allowing firearms to be sold without proper NICS background checks does not serve the local community in which the Petitioner is located. Transferring a firearm without conducting a NICS background check does not ensure that the local community is protected from people who should not legally be allowed to receive and possess firearms. FFLs like the Petitioner are subject to extensive legal obligations and the GCA tasks the Attorney General (and by delegation ATF) with ensuring that licensees do not abuse their privileges to make and distribute deadly merchandise by willfully violating the gun laws and regulations. *Anzio Ironworks, Corp. v. Gerber*, No. 8:20-CV-2132-KKM-AAS, 2022 WL 1500856, at *1 (M.D. Fla. May 12, 2022).

Thus, allowing Petitioner to continue its operations despite overwhelming evidence of its repeated violations of the GCA would be a disservice to the public.

## VI.     Conclusion

Petitioner cannot demonstrate that it is substantially likely to succeed on the merits. ATF was authorized to revoke its FFL based on a finding that it willfully violated the GCA. Even Petitioner could make such a showing, it has failed to demonstrate that its injury outweighs the harm to the public that would result such an injunction. Petitioner's Motion should be denied.

### CERTIFICATE OF COMPLIANCE WITH WORD COUNT

The undersigned certifies that the foregoing Memorandum of Law complies

with the word limit imposed by Local Rule 7.1(F), because it contains only <u>3,979</u> words.

                                          Respectfully submitted,

                                          JASON R. COODY
                                          United States Attorney

                                          <u>*/s/ William G. Pafford*</u>
                                          William G. Pafford
                                          Assistant United States Attorney
                                          Florida Bar No. 0099594
                                          Herbert S. Lindsey
                                          Assistant United States Attorney
                                          Texas Bar No. 00784476
                                          111 North Adams Street, 4th Floor
                                          Tallahassee, FL 32301
                                          Telephone: 850-942-8430
                                          Fax: 850-942-8466
                                          herbert.lindsey@usdoj.gov
                                          william.pafford@usdoj.gov
                                          Attorneys for Respondent

On the Brief

Amy Freyermuth
Kimberly Easterling
Jeffrey A. Cohen
Eileen Husselbaugh
ATF Office of Chief Counsel